Robert S. Green (State Bar No. 136183)
Emrah M. Sumer (State Bar No. 329181)
**GREEN & NOBLIN, P.C.**
2200 Larkspur Landing Circle, Suite 101
Larkspur, CA  94939
Telephone:  (415) 477-6700
Facsimile:  (415) 477-6710
Email:  gnecf@classcounsel.com

*Counsel for Plaintiff*

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN CROWL, and all similarly situated individuals,<br><br>                    Plaintiff,<br><br>        v.<br><br>CUPERTINO ELECTRIC, INC.,<br><br>                    Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

00126374.000

Plaintiff Kevin Crowl ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendant Cupertino Electric, Inc., based on personal knowledge and on information and belief from the investigation of counsel, and alleges as follows:

## I.    INTRODUCTION

1.      Between June 14, 2023 and June 24, 2023, hackers infiltrated and accessed the inadequately protected computer systems of Defendant Cupertino Electric, Inc. ("CEI", or "Defendant"). The hackers gained access to CEI's computer systems with the intent to steal the protected Personal Information of the millions of individuals whose information was stored on Defendant's computer systems (the "Data Breach"). And the hackers were successful with respect to potentially thousands of these individuals ("Breach Victims").

2.      The Personal Identifying Information taken by the hackers includes: names, addresses, Social Security Numbers ("SSN"), driver's license numbers, and dates of birth (collectively, "PII").

3.      In short, thanks to Defendant's failure to protect the Breach Victims' PII, cyber criminals were able to steal everything they could possibly need to commit nearly every conceivable form of identity theft and wreak havoc on the financial and personal lives of potentially millions of individuals.

4.      Defendant's conduct-failing to implement adequate and reasonable measures to ensure their computer systems were protected, failing to take adequate steps to prevent and stop the breach, failing to timely detect the breach, failing to disclose the material facts that they did not have adequate computer systems and security practices to safeguard the PII, failing to honor their repeated promises and representations to protect the Breach Victims' PII, and failing to provide timely and adequate notice of the Data Breach-caused substantial harm and injuries to Breach Victims across the United States.

5.      As a result of the Data Breach, Breach Victims have suffered damages. For example, Breach Victims have spent many hours filing police reports and monitoring credit reports and credit and bank accounts to combat identity theft. Many are now paying monthly or annual fees for identity theft and credit monitoring services. Now that their PII has been released into the criminal cyber domains, Breach Victims must spend their time being extra vigilant due to Defendant's failures to try to prevent being victimized for the rest of their lives.

6.      Plaintiff brings this class action lawsuit on behalf of a nationwide class to hold Defendant responsible for its negligent and reckless failure to use reasonable, current cybersecurity measures to protect Class Members' PII.

7.      Because Defendant presented such a soft target to cybercriminals, Plaintiff and class members have been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiff and class members must now and in the future, take their time to more closely monitor their financial accounts to guard against identity theft.

8.      Plaintiff and class members may also incur out-of-pocket costs for, among other things, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

9.      On behalf of himself and all Breach Victims, Plaintiff seeks actual damages, statutory damages, and punitive damages, with attorney fees, costs, and expenses under Cal. Civ. Code § 56, consumer protection and unfair and deceptive practices acts, negligence, negligence per se, unjust enrichment, and breach of implied contract. Plaintiff also seeks injunctive relief, including significant improvements to Defendant's data security systems, future annual audits, long-term credit monitoring services funded by Defendant, and other remedies as the Court sees fit.

## II.    THE PARTIES

10.    Plaintiff Kevin Crowl is a citizen and a resident of Douglas County, Nebraska, and is a former employee of CEI who worked for Defendant until 2019.

11.    Defendant is a Delaware corporation with its principal place of business in San Jose, California, in Santa Clara County.

## III.    JURISDICTION AND VENUE

12.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

13.    This Court has diversity jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action involving more than 100 class members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and many members of the class are citizens of states different from Defendant.

14.    This Court has personal jurisdiction over Defendant because its principal place of business is in this District, it regularly transacts business in this District, and many Class members reside in this District.

15.    Venue as to Defendant is proper in this judicial district under 28 U.S.C § 1391(b)(1) because Defendant's principal place of business is in this District and many of Defendant's acts complained of herein occurred within this District.

## IV.    FACTUAL ALLEGATIONS

16.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

## Defendant

17.    Defendant is relied upon to design and execute "first-of-their-kind" electrical systems for corporations, public entities, utility companies, and developers. Defendant has offices throughout California and jobsites across the

CLASS ACTION COMPLAINT

1    United States to deliver electrical services for commercial, energy, and data center

2    customers.

3    **Plaintiff**

4         18.    Plaintiff is a former employee of CEI.

5         19.    As a condition to employment by Defendant, Plaintiff was required to

6    provide Defendant with his highly sensitive PII.

7         20.    On or about August 3, 2023, Plaintiff received a letter from CEI,

8    dated July 28, 2023, informing him that his "name, address, Social Security

9    Number (SSN), driver's license number, and date of birth" was compromised in

10   the Data Breach. *See* **Exhibit 1** (*Letter from Bill Slakey to Kevin Crowl*, dated July

11   28, 2023).

12        21.    Because of the Data Breach, Plaintiff's PII is now in the hands of

13   cyber criminals. He, and all Breach Victims like him, are now imminently at risk

14   of crippling identity theft and fraud.

15        22.    Plaintiff has not been the victim of any previous data breach to his

16   knowledge.

17        23.    Plaintiff trusted CEI with his PII, and CEI violated that trust.

18       **A.**    **The Data Breach**

19        24.    On or around July 28, 2023, CEI sent Breach Victims a Notice of

20   Security Incident letter (the "Notice") providing, for the first time, a public notice

21   of "an incident that may affect the privacy of some of your information." *See*

22   Exhibit 1.

23        25.    In the Notice, CEI notified certain office and field employees that on

24   June 24, 2023—over a month earlier—it had "became aware of suspicious activity

25   on certain internal systems" and, after an internal investigation, "determined that

26   an unauthorized third party accessed and acquired information on certain CEI

27   systems between June 14, 2023 and June 24, 2023". It went on to say that within

28   eighteen (18) days of this discovery, CEI confirmed "that the confidentiality of

00126374.000

personal data of certain office and field employees working at CEI between January 21, 1954 and June 23, 2023 was impacted in this incident." *Id.*

26.    Yet, despite knowing many former and current employees' PII was in danger, Defendant did nothing to warn Breach Victims until over a month later. During this time, the cyber criminals had free reign to defraud their unsuspecting victims. CEI apparently chose to complete its internal investigation and develop its excuses and speaking points before giving class members the information they needed to protect themselves against fraud and identity theft.

27.    After its "comprehensive and thorough review," Defendant determined that:

> The information impacted by this incident may include your name, address, Social Security Number (SSN), driver's license number, and date of birth.

This was a staggering coup for the cyber criminals and a stunningly bad showing for Defendant.

28.    In spite of the severity of the Data Breach, Defendant has done very little to protect Breach Victims. In the Notice, CEI states that it is notifying Breach Victims of "resources available to [them] to help protect [their] information from possible misuse, *should [they] feel it is appropriate to do so.*"[1]  In effect, shirking its responsibility for the harm it has caused and putting it all on the Breach Victims.

29.    Defendant CEI failed to adequately safeguard Class Members' PII, allowing the cyber criminals to access this wealth of priceless information for over a month before CEI warned the Breach Victims to be on the lookout.

30.    Defendant CEI failed to spend sufficient resources on monitoring external incoming emails and training its employees to identify email-born threats and defend against them.

---

[1] *See Exhibit 1* (emphasis added).

00126374.000

31.     Defendant had obligations created reasonable industry standards, its own contracts with its patients and employees, common law, and its representations to Class Members to retain their PII in compliance with all applicable laws governing the retention of their personal data.

32.     Plaintiff and Class Members provided their PII to CEI with the reasonable expectation and mutual understanding that CEI would comply with its obligations to keep such information confidential and secure from unauthorized access.

33.      Indeed, as discussed below, CEI promised its former and current employees that it would do just that.

**B.     Defendant Promised to Protect PII**

34.     CEI provides all former and current employees, including Plaintiff, its CPRA (California Privacy Rights Act of 2020) External Privacy Policy. In fact, CEI is required to do so by federal and state law. CEI's CPRA External Privacy Policy states, as relevant:

> CEI's privacy commitments are fundamental to the way we run our business. These commitments apply to everyone who has a relationship with CEI….Cupertino Electric is committed to providing you with the best overall experience in our services. We strive to strike the right balance between using your personal data to ensure the quality of those experiences and protecting your privacy.[2]

35.     While CEI claims it is committed to protecting the privacy of "everyone who has a relationship with CEI", recent events prove otherwise.

36.     If CEI truly understands the importance of safeguarding its current and former employees PII, it should compensate Class Members for their losses, provide long-term protection for the Class, and agree to Court-ordered and enforceable changes to its cybersecurity policies and procedures and adopt regular and intensive training to ensure that something like this never happens again.

---

[2] Cupertino Electric, Inc., "CPRA External Privacy Policy," Effective Date: June 30, 2023, https://www.cei.com/privacy-policy (last accessed August 7, 2023).

37.    The Plaintiff's and Class Members' PII is now in the hands of cyber criminals who will use it if given the chance. Much of this information is unchangeable and loss of control of this information is remarkably dangerous to consumers.

### C.    Defendant had an Obligation to Protect PII under Federal and State Law and the Applicable Standard of Care

38.    Defendant is prohibited by the Federal Trade Commission Act (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." By allowing an unknown third-party to access a CEI server, CEI failed to employ reasonable and appropriate measures to protect against unauthorized access to confidential employee data. CEI's data security policies and practices constitute unfair acts or practices prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

39.    Federal and State governments have established security standards and issued recommendations to minimize data breaches and the resulting harm to individuals. The Federal Trade Commission ("FTC") has issued numerous guides for businesses that highlight the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making. [3]

40.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.[4] Among other things, the guidelines note businesses should properly dispose of PII that is no longer needed;

---

[3] *See* Federal Trade Commission, *Start With Security* (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited October 6, 2020).

[4] *See* Federal Trade Commission, *Protecting Personal Information: A Guide for Business* (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personalinformation.pdf (last October 6, 2020)

encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[5]

41.    In addition to their obligations under federal and state laws, Defendant owed a duty to Breach Victims whose PII was entrusted to Defendant to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Breach Victims to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems and networks, and the personnel responsible for them, adequately protected the PII of the Breach Victims.

42.    Defendant owed a duty to Breach Victims whose PII was entrusted to Defendant to design, maintain, and test its computer systems and email system to ensure that the PII in Defendant's possession was adequately secured and protected.

43.    Defendant owed a duty to Breach Victims whose PII was entrusted to Defendant to create and implement reasonable data security practices and procedures to protect the PII in their possession, including adequately training its employees and others who accessed PII within its computer systems on how to adequately protect Personal Information.

---

[5] *Id.*

00126374.000

44.     Defendant owed a duty to Breach Victims whose PII was entrusted to Defendant to implement processes that would detect a breach on its data security systems in a timely manner.

45.     Defendant owed a duty to Breach Victims whose PII was entrusted to Defendant to act upon data security warnings and alerts in a timely fashion.

46.     Defendant owed a duty to Breach Victims whose PII was entrusted to Defendant to disclose if its computer systems and data security practices were inadequate to safeguard individuals' PII from theft because such an inadequacy would be a material fact in the decision to entrust PII with Defendant.

47.     Defendant owed a duty to Breach Victims whose PII was entrusted to Defendant to disclose in a timely and accurate manner when data breaches occurred.

48.     Defendant owed a duty of care to Breach Victims because they were foreseeable and probable victims of any inadequate data security practices.

**D.     Cyber Criminals Will Use Plaintiff's PII to Defraud**

49.     PII is of great value to hackers and cyber criminals, and the data stolen in the Data Breach can and will be used in a variety of ways by criminals to exploit Plaintiff and the Class Members to profit off their misfortune.

50.     Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[6] For example, with the PII stolen in the Data Breach, including Social Security numbers, identity thieves can open financial accounts, apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or

_____

[6] "Facts + Statistics: Identity Theft and Cybercrime," Insurance Info. Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[7]

51.    Social security numbers are particularly sensitive pieces of personal information.  As the Consumer Federation of America explains:

> **Social Security number.** *This is the most dangerous type of PII in the hands of identity thieves* because it can open the gate to serious fraud, from obtaining credit in your name to impersonating you to get medical services, government benefits, your tax refunds, employment – even using your identity in bankruptcy and other legal matters. It's hard to change your Social Security number and it's not a good idea because it is connected to your life in so many ways.[8]

[Emphasis added.]

52.    This was a financially motivated Breach, as the only reason the cyber criminals go through the trouble of running a targeted cyberattack against companies like CEI is to get information that they can monetize by selling it on the black market for use in the kinds of criminal activity described herein.  Indeed, a social security number, date of birth, and full name can sell for $60 to $80 on the digital black market.[9] "[I]f there is reason to believe that your PII has been stolen, you should assume that it can end up for sale on the dark web."[10]

---

[7] *See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

[8] *Dark Web Monitoring: What You Should Know*, Consumer Federation of America, Mar. 19, 2019, https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/.

[9] Michael Kan, *Here's How Much Your Identity Goes for on the Dark Web*, Nov. 15, 2017, https://www.pcmag.com/news/heres-how-much-your-identity-goes-for-on-the-dark-web.

[10] *Dark Web Monitoring: What You Should Know*, Consumer Federation of America, Mar. 19, 2019, https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/.

00126374.000

53.    Hackers may not use the information right away, but this does not mean it will not be used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data has been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[11]

54.    For instance, with a stolen social security number, which is part of the PII compromised here, someone can open financial accounts, get medical care, file fraudulent tax returns, commit crimes, and steal benefits. [12]

55.    Identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit as well as protecting themselves in the future.

56.    Defendant's offer of twenty-four (24) months of credit and identity monitoring to Plaintiff and the Class is woefully inadequate and will not fully protect them from the damages and harm caused by Defendant's cybersecurity failures. While some harm has begun already, the full scope of the harm has yet to be realized. There may be a time lag between when the harm occurs versus when it is discovered, and also between when the PII is stolen and when it is used. Once the twenty-four months have expired, Plaintiff and Class Members will need to pay for their own identity theft protection and credit monitoring for the rest of their lives due to Defendant's gross negligence. Furthermore, identity monitoring only alerts someone to the fact that they have *already been the victim of identity*

---

[11] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown,* GAO, June 4, 2007, https://www.gao.gov/assets/gao-07-737.pdf

[12] *See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

00126374.000

1  *theft*—it does not prevent identity theft.[13] Nor can identity monitoring service

2  remove PII remove PII from the dark web.[14] "The people who trade in stolen

3  PII[on the dark web] won't cooperate with an identity theft service or anyone else,

4  so it's impossible to get the information removed, stop its sale, or prevent

5  someone who buys it from using it."[15]

6  57.    As a direct and proximate result of the Data Breach, Plaintiff and

7  Class Members have been placed at an imminent, immediate, and continuing

8  increased risk of harm from continued fraud and identity theft. Plaintiff and Class

9  Members must now take the time and effort to mitigate the actual and potential

10  impact of the Data Breach in their everyday lives, including placing "freezes" and

11  "alerts" with credit reporting agencies, contacting their financial institutions,

12  closing or modifying financial accounts, and closely reviewing and monitoring

13  bank accounts and credit reports for unauthorized activity for years to come. Even

14  more seriously is the identity restoration that Plaintiff and other Class Members

15  must go through, which can include spending countless hours filing police reports,

16  filling out IRS forms, Federal Trade Commission checklists, Department of Motor

17  Vehicle driver's license replacement applications, and calling financial institutions

18  to cancel fraudulent credit applications, to name just a few of the steps Plaintiff

19  and Class Members must take.

20  58.    Plaintiff and Class Members have suffered, and continue to suffer,

21  actual harms for which they are entitled to compensation, including:

22        a.    Trespass, damage to, and theft of their personal property

23              including their PII;

---

[13] *See, e.g.*, Kayleigh Kulp, *Credit Monitoring Services May Not Be Worth the Cost*, Nov. 30, 2017, https://www.cnbc.com/2017/11/29/credit-monitoring-services-may-not-be-worth-the-cost.html.

[14] *Dark Web Monitoring: What You Should Know*, Consumer Federation of America, Mar. 19, 2019, https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/.

[15] *Id.*

00126374.000

b.      Improper disclosure of their PII;

c.      The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals;

d.      Loss of privacy suffered as a result of the Data Breach, including the harm of knowing cyber criminals have their PII and that identity thieves may use that information to defraud other victims of the Data Breach;

e.      Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the Data Breach; and

f.      Ascertainable losses in the form of deprivation of the value of Plaintiff's and Class Members' PII for which there is a well-established and quantifiable national and international market.

59.     Plaintiff and Class Members have an interest in ensuring that their information, which remains in the possession of the Defendant, is protected from further breaches by the implementation of industry standard security measures and safeguards. Defendant has shown themselves to be wholly incapable of protecting Plaintiff's and Class Members' PII.

60.     Defendant themselves acknowledged the harm caused by the Data Breach because it offered Plaintiff and Class Members the woefully inadequate twenty-four months of identity theft repair and credit monitoring services. Twenty-four months of credit and identity theft monitoring is, however, inadequate to protect Plaintiff and Class Members from a lifetime of identity theft risk.[16]

61.     Defendant further acknowledged, in its letter to Plaintiff and Class Members, that CEI needed to improve its security protocols, stating: "As part of

---

[16] *See* Exhibit 1.

00126374.000

our ongoing commitment to the privacy of information in our care at CEI, we are reviewing our policies, procedures, and processes related to the storage and access of personal information to reduce the likelihood of a similar future event."[17]

62.    The Notice further acknowledged that the Data Breach would cause Plaintiff and the Class Members inconvenience, and that financial harm would likely occur by stating: "We encourage you to remain vigilant against incidents of identity theft and fraud by reviewing your account statements and monitoring your free credit reports for suspicious activity and to detect errors over the next 12 to 24 months."

63.    At Defendant's suggestion, Plaintiff and Class Members are desperately trying to mitigate the damage that the Data Breach has caused them. Given the kind of PII Defendant made accessible to hackers, the Plaintiff and Class Members are certain to incur additional damages. Because identity thieves have their PII, Plaintiff and Class Members will need to have identity theft monitoring protection for the rest of their lives. Some may even need to go through the long and arduous process of getting a new Social Security number, with all the loss of credit and employment difficulties that come with a new number.[18]

64.    None of this should have happened.

**E.    Defendant Was Aware of the Risk of Cyber Attacks**

65.    Defendant, who collects employees' PII requiring the collection and maintenance of highly sensitive and valuable PII, should have been aware, and indeed was aware, that it was at risk for a data breach that could expose the PII that it collected and maintained.

---

[17] *Id.*

[18] *Will a New Social Security Number Affect Your Credit?*, Lexington Law (Nov. 16, 2015), https://www.lexingtonlaw.com/blog/credit-101/will-a-new-social-security-number-affect-your-credit.html.

00126374.000

66.     With the increasing prevalence of data breach announcements, Defendant certainly recognized it had a duty to use reasonable measures to protect the wealth of PII that it collected and maintained.

67.     In 2022, a total of 1,802 data breaches occurred, which represents the second highest number of data events in a single year and just 60 events short of the all-time record of 1,862 in 2021.

68.     In 2022, the utility services industry saw 115 data breaches with 467,664 victims.[19] In light of the significant number of data breaches that occurred in the utility services industry in 2022, Defendant knew or should have known that its employees' PII would be targeted by cybercriminals.

69.     Defendant was clearly aware of the risks it was taking and the harm that could result from inadequate data security.

**F.     Defendant Could Have Prevented the Breach**

70.     Data breaches are preventable.[20] As Lucy Thompson wrote in the Data Breach and Encryption Handbook, "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions.[21] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[22]

71.     "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures.

---

[19] https://www.idtheftcenter.org/wp-content/uploads/2023/01/ITRC_2022-Data-Breach-Report_Final-1.pdf.
[20] Lucy L. Thomson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* Data Breach and Encryption Handbook (Lucy Thompson, ed., 2012).
[21] *Id*. at 17.
[22] *Id*. at 28.

00126374.000

1  . . . Appropriate information security controls, including encryption, must be

2  implemented and enforced in a rigorous and disciplined manner so that a *data*

3  *breach never occurs.*"[23]

4      72.    In a Data Breach like this, many failures laid the groundwork for the

5  Breach. The FTC has published guidelines that establish reasonable data security

6  practices for businesses. The FTC guidelines emphasize the importance of having

7  a data security plan, regularly assessing risks to computer systems, and

8  implementing safeguards to control such risks. [24]

9      73.    The guidelines establish that businesses should protect the

10  confidential information that they keep; properly dispose of personal information

11  that is no longer needed; encrypt information stored on computer networks;

12  understand their network's vulnerabilities; and implement policies for installing

13  vendor-approved patches to correct security problems. The guidelines also

14  recommended that businesses utilize an intrusion detection system to expose a

15  breach as soon as it occurs; monitor all incoming traffic for activity indicating

16  hacking attempts; watch for large amounts of data being transmitted from the

17  system; and have a response plan ready in the event of a breach.

18      74.    Upon information and belief, Defendant failed to maintain many

19  reasonable and necessary industry standards necessary to prevent a data breach,

20  including the FTC's guidelines.  Upon information and belief, Defendant also

21  failed to meet the minimum standards of any of the following frameworks: the

22  NIST Cybersecurity Framework, NIST Special Publications 800-53, 53A, or 800-

23  171; the Federal Risk and Authorization Management Program (FEDRAMP); or

24  the Center for Internet Security's Critical Security Controls (CIS CSC), which are

25  well respected authorities in reasonable cybersecurity preparation.

26  _____

[23] *Id.*

27  [24] FTC, *Protecting Personal Information: A Guide for Business*,

28  https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

00126374.000

75.     As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection." [25]

76.     To prevent and detect cyber-attacks, including the attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the Federal Bureau of Investigation, the following measures:

a.     Implement an awareness and training program.  Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

b.     Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

c.     Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

d.     Configure firewalls to block access to known malicious IP addresses.

e.     Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

f.     Set anti-virus and anti-malware programs to conduct regular scans automatically.

g.     Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative

---

[25] *See* How to Protect Your Networks from RANSOMWARE, at 3, *available at* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view.

00126374.000

1  access unless absolutely needed; and those with a need for

2  administrator accounts should only use them when necessary.

3  h.  Configure access controls—including file, directory, and

4  network share permissions—with least privilege in mind. If a

5  user only needs to read specific files, the user should not have

6  write access to those files, directories, or shares.

7  i.  Disable macro scripts from office files transmitted via email.

8  Consider using Office Viewer software to open Microsoft

9  Office files transmitted via email instead of full office suite

10  applications.

11  j.  Implement Software Restriction Policies (SRP) or other

12  controls to prevent programs from executing from common

13  ransomware locations, such as temporary folders supporting

14  popular Internet browsers or compression/decompression

15  programs, including the AppData/LocalAppData folder.

16  k.  Consider disabling Remote Desktop protocol (RDP) if it is not

17  being used.

18  l.  Use application whitelisting, which only allows systems to

19  execute programs known and permitted by security policy.

20  m.  Execute operating system environments or specific programs

21  in a virtualized environment.

22  n.  Categorize data based on organizational value and implement

23  physical and logical separation of networks and data for

24  different organizational units.[26]

25  77.  Further, to prevent and detect cyber-attacks, including the cyber-

26  attack that resulted in the Data Breach, Defendant could and should have

27

28

---

[26] *Id*. at 3-4.

00126374.000

1    implemented, as recommended by the United States Cybersecurity &

2    Infrastructure Security Agency, the following measures:

3        a.    **Update and patch your computer**.  Ensure your applications

4              and operating systems (OSs) have been updated with the latest

5              patches. Vulnerable applications and OSs are the target of most

6              ransomware attacks….

7        b.    **Use caution with links and when entering website**

8              **addresses**.  Be careful when clicking directly on links in

9              emails, even if the sender appears to be someone you know.

10             Attempt to independently verify website addresses (e.g.,

11             contact your organization's helpdesk, search the internet for the

12             sender organization's website or the topic mentioned in the

13             email). Pay attention to the website addresses you click on, as

14             well as those you enter yourself. Malicious website addresses

15             often appear almost identical to legitimate sites, often using a

16             slight variation in spelling or a different domain (e.g., .com

17             instead of .net)….

18       c.    **Open email attachments with caution**. Be wary of opening

19             email attachments, even from senders you think you know,

20             particularly when attachments are compressed files or ZIP

21             files.

22       d.    **Keep your personal information safe**.  Check a website's

23             security to ensure the information you submit is encrypted

24             before you provide it….

25       e.    **Verify email senders**.  If you are unsure whether or not an

26             email is legitimate, try to verify the email's legitimacy by

27             contacting the sender directly. Do not click on any links in the

28             email. If possible, use a previous (legitimate) email to ensure

00126374.000

1    the contact information you have for the sender is authentic

2    before you contact them.

3    f.    **Inform yourself**.  Keep yourself informed about recent

4    cybersecurity threats and up to date on ransomware techniques.

5    You can find information about known phishing attacks on the

6    Anti-Phishing Working Group website. You may also want to

7    sign up for CISA product notifications, which will alert you

8    when a new Alert, Analysis Report, Bulletin, Current Activity,

9    or Tip has been published.

10    g.    **Use and maintain preventative software programs**. Install

11    antivirus software, firewalls, and email filters—and keep them

12    updated—to reduce malicious network traffic….[27]

13    78.    In addition, to prevent and detect cyber-attacks, including the cyber-

14    attack that resulted in the Data Breach, Defendant could and should have

15    implemented, as recommended by the Microsoft Threat Protection Intelligence

16    Team, the following the measures:

17    a.    **Secure internet-facing assets**

18    i.    Apply latest security updates

19    ii.    Use threat and vulnerability management

20    iii.    Perform regular audit; remove privileged credentials

21    b.    **Thoroughly investigate and remediate alerts**

22    i.    Prioritize and treat commodity malware infections as

23    potential full compromise;

24

25

26

27

28    [27] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release
date Apr. 11, 2019), *available at* https://us-cert.cisa.gov/ncas/tips/ST19-001.

1       c.      **Include IT Pros in security discussions**

2             i.     Ensure collaboration among [security operations],

3                   [security admins], and [information technology] admins

4                   to configure servers and other endpoints securely;

5       d.      **Build credential hygiene**

6             i.     Use [multifactor authentication] or [network level

7                   authentication] and use strong, randomized, just-in-time

8                   local admin passwords

9       e.      **Apply principle of least-privilege**

10             i.     Monitor for adversarial activities

11             ii.    Hunt for brute force attempts

12             iii.   Monitor for cleanup of Event Logs

13             iv.   Analyze logon events

14       f.      **Harden infrastructure**

15             i.     Use Windows Defender Firewall

16             ii.    Enable tamper protection

17             iii.   Enable cloud-delivered protection

18             iv.   Turn on attack surface reduction rules and [Antimalware

19                   Scan Interface] for Office [Visual Basic for

20                   Applications].[28]

21    79.    Given that Defendant were storing the PII of thousands of

22 individuals, Defendant could and should have implemented all of the above

23 measures to prevent and detect ransomware attacks.

24

25

26

----

27  [28] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020),

28  *available at* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/.

00126374.000

80.    Specifically, among other failures, Defendant had far too much confidential unencrypted information held on its systems.  Such PII should have been segregated into an encrypted system.[29]

81.    Moreover, it is well-established industry standard practice for a business to dispose of confidential PII once it is no longer needed.  The FTC, among others, has repeatedly emphasized the importance of disposing unnecessary PII, saying simply: "Keep sensitive data in your system only as long as you have a business reason to have it.  Once that business need is over, properly dispose of it. If it's not on your system, it can't be stolen by hackers."[30]

82.    Defendant, rather than following this basic standard of care, kept millions of individuals' unencrypted PII indefinitely. The Notice stated, "On July 23, 2023 we determined that the confidentiality of personal data of certain office and field employees working at CEI between January 21, 1954 and June 23, 2023 was impacted in this incident."[31] CEI was founded in 1954.[32]

83.    In sum, this Data Breach could have readily been prevented through the use of industry standard network segmentation and encryption of all PII. Further, the scope of the Data Breach could have been dramatically reduced had Defendant utilized proper record retention and destruction practices.

V.    **CLASS ALLEGATIONS**

84.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

---

[29] *See, e.g.,* Adnan Raja, *How to Safeguard Your Business Data with Encryption*, Aug. 14, 2018, https://digitalguardian.com/blog/how-safeguard-your-business-data-encryption.

[30] FTC, *Protecting Personal Information: A Guide for Business*, https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf at p. 6.

[31] *See* Exhibit 1.

[32] *See* https://www.cei.com/about-cei/history

00126374.000

1    85.    Plaintiff brings all claims as class claims under Federal Rule of Civil

2    Procedure 23. The requirements of Federal Rule of Civil Procedure 23(a) and

3    23(b)(3), Plaintiff asserts all claims on behalf of a nationwide class (the "Class"),

4    defined as follows:

5    **All natural persons residing in the United States whose personal
     identifiable information (PII) was compromised as a result of the
6    Data Breach announced by Defendant on July 28, 2023.**

7    86.    Excluded from the Class are Defendant, any entity in which

8    Defendant has a controlling interest, and Defendant's officers, directors, legal

9    representatives, successors, subsidiaries, and assigns. Also excluded from the

10   Class is any judge, justice, or judicial officer presiding over this matter and the

11   members of their immediate families and judicial staff.

12   **A.    CLASS CERTIFICATION IS APPROPRIATE**

13   87.    The proposed Nationwide Class meets the requirements of Fed. R.

14   Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

15   88.    **Numerosity:** The proposed Class is so numerous that joinder of all

16   members is impracticable. According to the Attorney General for the State of

17   Maine Data Brech Notifications, the total number of persons affected by the Data

18   Brech is 24,684.

19   89.    **Commonality and Predominance:** There are many questions of law

20   and fact common to the claims of Plaintiff and the other members of the Class,

21   and those questions predominate over any questions that may affect individual

22   members of the Class. Common questions for the Class include:

23       a.    When Defendant actually learned of the Data Breach and

24           whether its response was adequate;

25       b.    Whether Defendant failed to adequately safeguard Plaintiff's

26           and Class Members' PII;

27       c.    Whether Defendant owed a duty to Plaintiff and the Class to

28           adequately protect their PII, and whether it breached this duty;

-23-
CLASS ACTION COMPLAINT

00126374.000

1      d.    Whether Defendant breached its duties to Plaintiff and the
2            Class as a result of the Data Breach;
3      e.    Whether Defendant failed to provide adequate cyber security;
4      f.    Whether Defendant knew or should have known that its
5            computer and network security systems were vulnerable to
6            cyber-attacks;
7      g.    Whether Defendant's conduct, including its failure to act,
8            resulted in or was the proximate cause of the breach of its
9            company network;
10     h.    Whether Defendant was negligent in permitting unencrypted
11           PII off vast numbers of individuals to be stored within its
12           network;
13     i.    Whether Defendant was negligent in failing to adhere to
14           reasonable retention policies, thereby greatly increasing the
15           size of the Data Breach to include former employees and
16           business associates;
17     j.    Whether Defendant breached implied contractual duties to
18           Plaintiff and Class Members to use reasonable care in
19           protecting their PII;
20     k.    Whether Defendant failed to adequately respond to the Data
21           Breach, including failing to investigate it diligently and notify
22           affected individuals in the most expedient time possible and
23           without unreasonable delay, and whether this caused damages
24           to Plaintiff and Class Members;
25     l.    Whether Defendant continues to breach duties to Plaintiff and
26           Class Members;
27     m.    Whether Plaintiff and the Class suffered injury as a proximate
28           result of Defendant's negligent actions or failures to act;

00126374.000

1
2
3
4
5

n.      Whether Plaintiff and the Class are entitled to recover damages, equitable relief, and other relief; and

**o.**      Whether Defendant's actions alleged herein constitute gross negligence, and whether Plaintiff and Class Members are entitled to punitive damages.

6
7
8
9

90.      **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and the members of the Class sustained damages as a result of Defendant's uniform wrongful conduct. All had their PII compromised as a result of the Data Breach.

10
11
12
13
14
15
16
17

91.      **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and there are no defenses unique to Plaintiff. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

18
19
20
21
22
23
24

92.      **Risks of Prosecuting Separate Actions:** This case is appropriate for certification because prosecution of separate actions would risk either inconsistent adjudications which would establish incompatible standards of conduct for the Defendant or would be dispositive of the interests of members of the proposed Class. Furthermore, Defendant is still in possession of PII of the Plaintiff and the Class, and Defendant's systems are still vulnerable to attack—one standard of conduct is needed to ensure the future safety of PII in Defendant's possession.

25
26
27
28

93.      **Policies Generally Applicable to the Class:** This case is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct

00126374.000

towards members of the Class, and making final injunctive relief appropriate with respect to the proposed Class as a whole. Defendant's practices challenged herein apply to and affect the members of the Class uniformly, and Plaintiff's challenge to those practices hinges on Defendant's conduct with respect to the proposed Class as a whole, not on individual facts or law applicable only to Plaintiff.

94.    **Superiority:** This case is also appropriate for certification because class proceedings are superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and the members of the Class. The injuries suffered by each individual member of the Class are relatively small in comparison to the burden and expense of individual prosecution of the litigation necessitated by Defendant's conduct. Absent a class action, it would be virtually impossible for individual members of the Class to obtain effective relief from Defendant. Even if members of the Class could sustain individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties, including the Court, and would require duplicative consideration of the common legal and factual issues presented here. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court.

## VI.    CAUSES OF ACTION

### A.    COUNT I – NEGLIGENCE

95.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

96.    As a condition of their employment, Plaintiff and Class Members were obligated to provide Defendant with their PII.

97.    Upon accepting and storing the PII of Plaintiff and the Class Members on its computer systems and networks, Defendant undertook and owed a duty to Plaintiff and Class Members to exercise reasonable care to secure and

-26-

00126374.000

safeguard that information and to use secure methods to do so. Defendant had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class Members could and would suffer if the PII was wrongfully disclosed. Plaintiff and Class Members were the foreseeable victims of any inadequate safety and security practices. Plaintiff and the Class Members had no ability to protect their PII that was in Defendant's possession. As such, a special relationship existed between Defendant, the Plaintiff, and the Members of the Class.

98.   Because of this special relationship, Defendant required Plaintiff and Class Members to provide their PII, including names, Social Security numbers, and other personal information.

99.   Defendant knew, or should have known, of the risks inherent in collecting and storing this PII of the Plaintiff and the Class and the importance of adequate security.

100.   Implied in these exchanges was a promise by Defendant to ensure that the PII of the Plaintiff and Class Members in its possession was only used to provide the agreed-upon compensation and other employment benefits from Defendant and that Defendant would destroy any PII that it was not required to maintain.

101.   Through Defendant's acts and omissions, including Defendant's failure to provide adequate security, its failure to protect Plaintiff's and Class Members' PII from being foreseeably accessed, and its improper retention of PII it was not required to maintain, Defendant negligently failed to observe and perform its duty.

102.   Defendant was aware of the fact that cyber criminals routinely target large corporations through cyberattacks in an attempt to steal customer and employee PII.

103.   Defendant owed Plaintiff and the Class Members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and

00126374.000

1  the Class when obtaining, storing, using, and managing personal information,

2  including taking action to reasonably safeguard or delete such data and providing

3  notification to Plaintiff and the Class members of any breach in a timely manner

4  so that appropriate action could be taken to minimize losses.

5      104.   Defendant's duty extended to protecting Plaintiff and the Class from

6  the risk of foreseeable criminal conduct of third parties, which has been

7  recognized in situations where the actor's own conduct or misconduct exposes

8  another to the risk or defeats protections put in place to guard against the risk, or

9  where the parties are in a special relationship. See Restatement (Second) of Torts

10 § 302B.

11     105.   Defendant owed duties of care to Plaintiff and the Class whose PII

12 was entrusted to it.  Defendant's duties included the following:

13         a.    To exercise reasonable care in obtaining, retaining, securing,

14               safeguarding, deleting and protecting the PII in its possession;

15         b.    To protect the PII in its possession using reasonable and

16               adequate security procedures and systems;

17         c.    To adequately and properly train its employees regarding how

18               to properly and securely transmit and store PII;

19         d.    To implement processes to quickly detect a data breach,

20               security incident, or intrusion; and

21         e.    To promptly notify Plaintiff and Class members of any data

22               breach, security incident, or intrusion that affected or may have

23               affected their PII.

24     106.   Defendant's willful failure to abide by these duties was wrongful,

25 reckless, and grossly negligent considering the foreseeable risks and known

26 threats.

27     107.   As a direct and proximate result of Defendant's negligent conduct,

28 including but not limited to its failure to implement and maintain reasonable

00126374.000

security practices and procedures as described above, Plaintiff and the Class have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

108.    Through Defendant's acts and omissions described herein, including but not limited to Defendant's failure to protect the PII of Plaintiff and Class Members from being stolen and misused, Defendant unlawfully breached its duty to use reasonable care to adequately protect and secure the PII of Plaintiff and Class Members while it was within Defendant's possession and control.

109.    Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiff and Class Members, Defendant prevented Plaintiff and Class Members from taking meaningful, proactive steps to securing their PII and mitigating damages.

110.    Plaintiff and Class Members could have taken actions earlier had they been timely notified of the Data Breach.

111.    Plaintiff and Class Members could have enrolled in credit monitoring, could have instituted credit freezes, and could have changed their passwords, among other things, had they been alerted to the Data Breach more quickly.

112.    Plaintiff and Class Members have suffered harm from the delay in notifying them of the Data Breach.

113.    As a direct and proximate cause of Defendant's conduct, including but not limited to its failure to implement and maintain reasonable security practices and procedures, Plaintiff and Class Members have suffered, and/or will suffer injury and damages, including but not limited to:

      a.    The loss of the opportunity to determine for themselves how their PII is used;

      b.    The publication and/or theft of their PII;

00126374.000

1     c.  Out-of-pocket expenses associated with the prevention,

2        detection, and recovery from identity theft, tax fraud, and/or

3        unauthorized use of their PII, including the need for substantial

4        credit monitoring and identity protection services for an

5        extended period of time;

6     d.  Lost opportunity costs associated with effort expended and the

7        loss of productivity addressing and attempting to mitigate the

8        actual and future consequences of the Data Breach, including

9        but not limited to efforts spent researching how to prevent,

10       detect, contest and recover from tax fraud and identity theft;

11     e.  Costs associated with placing freezes on credit reports and

12        password protections;

13     f.  Anxiety, emotional distress, loss of privacy, and other

14        economic and non-economic losses;

15     g.  The continued risk to their PII, which remains in Defendant's

16        possession and is subject to further unauthorized disclosures so

17        long as Defendant fails to undertake appropriate and adequate

18        measures to protect the PII of employees in its continued

19        possession; and

20     h.  Future costs in terms of time, effort and money that will be

21        expended to prevent, detect, contest, and repair the inevitable

22        and continuing consequences of compromised PII for the rest

23        of their lives. Thus, Plaintiff and the Class are entitled to

24        damages in an amount to be proven at trial.

25  114.  The damages Plaintiff and the Class have suffered (as alleged above)

26 and will suffer were and are the direct and proximate result of Defendant's

27 negligent conduct.

28

00126374.000

115.    Plaintiff and the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

**B.    COUNT II – NEGLIGENCE PER SE**

116.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

117.    Pursuant to the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security to safeguard the PII of Plaintiff and the Class.

118.    The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as CEI, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also formed part of the basis of Defendant's duty in this regard.

119.    As a condition of employment, Plaintiff and the Class Members were obligated to provide Defendant with their PII.

120.    Defendant violated the FTCA by failing to use reasonable measures to protect the PII of Plaintiff and the Class and not complying with applicable industry standards, as described herein.

121.    Defendant breached its duties to Plaintiff and the Class under the FTCA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Breach Victim's PII.

122.    Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se*.

123.    Plaintiff and the Class are within the class of persons that the FTCA was intended to protect.

124.    The harm that occurred as a result of the Data Breach is the type of harm the FTCA was intended to guard against.

00126374.000

125. Defendant breached its duties to Plaintiff and the Class under these laws by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and the Class Members' PII.

126. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered, and continue to suffer, damages arising from the Data Breach by, *inter alia*, having to spend time reviewing their accounts and credit reports for unauthorized activity; spend time and incur costs to place and re-new a "freeze" on their credit; be inconvenienced by the credit freeze, which requires them to spend extra time unfreezing their account with each credit bureau any time they want to make use of their own credit; and becoming a victim of identity theft, which may cause damage to their credit and ability to obtain insurance, medical care, and jobs.

127. The injury and harm that Plaintiff and Class members suffered (as alleged above) was the direct and proximate result of Defendant's negligence *per se*.

## C.    COUNT III – BREACH OF IMPLIED CONTRACT

128. Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

129. Defendant offered employment, compensation, and other elective benefits to Plaintiff and the Class Members in exchange for their PII and labor.

130. Defendant required Plaintiff and the Class Members to provide their PII, including names and Social Security numbers, and other personal information. In exchange Defendant promised to keep the PII of Plaintiff and Class members safe from unauthorized access and to delete or destroy the PII once the employment relationship ended, or it was no longer necessary to maintain the PII.

131. Plaintiff and Class Members, had they known that Defendant would not keep their PII secure or that Defendant would continue to possess it for years

00126374.000

1    after their employment ended, would have demanded higher pay or chosen to take

2    other employment and not be employed by Defendant.

3        132.    Implied in these exchanges was a promise by Defendant to ensure

4    that the PII of Plaintiff and the Class Members in its possession was only used to

5    provide the agreed-upon compensation and other elective employment benefits

6    from Defendant.

7        133.    These exchanges constituted an agreement between the Parties:

8    Plaintiff and the Class Members would provide their PII for a limited period of

9    time in exchange for employment and benefits provided by Defendant. No

10   reasonable person would have provided their PII to Defendant without a promise

11   to safeguard it and no reasonable person would have provided their PII to

12   Defendant to retain for its own uses for years after the employment ended.

13       134.    These agreements were made with Plaintiff as an inducement to

14   being employed by Defendant.

15       135.    It is clear from these exchanges that the parties intended to enter into

16   an agreement. Plaintiff and the Class Members would not have disclosed their PII

17   to Defendant but for Defendant's promise of compensation and other employment

18   benefits and Defendant's promise to safeguard and delete their PII. Defendant

19   presumably would not have taken Plaintiff's and Class Members' PII if it did not

20   intend to provide Plaintiff and the Class Members compensation and other

21   employment benefits. Nor could Defendant reasonably infer from the

22   circumstances of the transaction that safeguarding the PII was a not necessary

23   obligation or that it could maintain the PII for purposes unrelated to employment,

24   i.e., after the relationship ended.

25       136.    Defendant was therefore required to reasonably safeguard and protect

26   the PII of Plaintiff and the Class Members from unauthorized disclosure and/or

27   use and to delete it following the end of the employment relationship.

28

00126374.000

137.   Plaintiff and the Class Members accepted Defendant's employment offer and fully performed their obligations under the implied contract with Defendant by providing their PII, directly or indirectly, to Defendant, among other obligations.

138.   Plaintiff and the Class Members would not have provided and entrusted their PII to Defendant in the absence of their implied contracts with Defendant and would have instead retained the opportunity to control their PII for uses other than compensation and other employment benefits from Defendant.

139.   Plaintiff and the Class Members did not provide their PII for non-employment purposes and Defendant had no reason to retain it following the end of the employment term.

140.   Defendant breached their implied contracts with the Plaintiff and the Class Members by failing to reasonably safeguard and protect Plaintiff's and Class Members' PII.

141.   Defendant's failure to implement adequate measures to protect the PII of Plaintiff and Class Members violated the purpose of the agreement between the parties: Plaintiff's and Class Members' employment in exchange for compensation and benefits.

142.   Defendant was on notice that its systems could be vulnerable to unauthorized access yet failed to invest in proper safeguarding of Plaintiff's and Class Members' PII.

143.   Instead of spending adequate financial resources to safeguard Plaintiff's and Class Members' PII, which Plaintiff and the Class Members were required to provide to Defendant, Defendant instead used that money for other purposes, thereby breaching its implied contracts it had with Plaintiff and Class Members.

144.   Plaintiff and the Class Members did all or substantially all the significant things that the contract required them to do.

00126374.000

145.   As a proximate and direct result of Defendant's breaches of its implied contracts with Plaintiff and Class Members, Plaintiff and the Class Members suffered injury as described in detail in this complaint and are entitled to damages in an amount to be proven at trial.

146.   The losses and damages Plaintiff and Class members sustained (as described above) were the direct and proximate result of Defendant's breach of the implied contract with Plaintiff and Class members.

**D.    COUNT IV – BREACH OF IMPLIED CONVENANT OF GOOD FAITH AND FAIR DEALING**

147.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

148.   As described above, CEI made promises and representations to Plaintiff and the Class that it would comply with applicable laws and industry best practices.

149.   These promises and representations became a part of the contract between CEI and Breach Victims.

150.   While CEI had discretion in the specifics of how it met the applicable laws and industry standards, this discretion was governed by an implied covenant of good faith and fair dealing.

151.   Defendant breached this implied covenant when it engaged in acts and/or omissions that are declared unfair trade practices by the FTC and state statutes and regulations when it engaged in unlawful practices under other laws. These acts and omissions included: omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for the Plaintiff's and Class members' PII; storing the PII of former employees despite any valid purpose for the storage thereof ceasing upon terminating the relationship with those individuals; and failing to disclose to the Plaintiff and Class Members at the time they provided their PII to it that Defendant's data security systems,

00126374.000

1   including training, auditing, and testing of employees, improperly retained the PII
2   of Plaintiff and Class Members after it was no longer necessary, and failed to meet
3   applicable legal and industry standards.

4       152.   The Plaintiff and Class Members did all or substantially all of the
5   significant things that the contract required them to do.

6       153.   Likewise, all conditions required for Defendant's performance were
7   met.

8       154.   Defendant's acts and omissions unfairly interfered with the Plaintiff's
9   and Class Members' rights to receive the full benefit of their contracts.

10      155.   The Plaintiff and Class Members have been harmed by Defendant's
11  breach of this implied covenant in the many ways described above, including
12  overpayment for products and services, actual identity theft and/or imminent risk
13  of devastating identity theft that exists now that cyber criminals have their PII, and
14  the attendant long-term expense of attempting to mitigate and insure against these
15  risks.

16      156.   CEI is liable for this breach of these implied covenants whether or
17  not it is found to have breached any specific express contractual term.

18      157.   The Plaintiff and Class Members are entitled to damages, including
19  compensatory damages and restitution, declaratory and injunctive relief, and
20  attorney fees, costs, and expenses.

21  **E.     COUNT V – UNJUST ENRICHMENT**

22      158.   Plaintiff incorporates by reference all allegations of the preceding
23  paragraphs as though fully set forth herein.

24      159.   The Plaintiff and the Class Members conferred a monetary benefit on
25  Defendant by providing their PII which Defendant required as a condition of their
26  employment. The Plaintiff and Class Members provided their PII and accepted
27  employment on the condition that Defendant safeguard their PII and delete it once
28  it was no longer required to retain it.

00126374.000

160.   The Plaintiff and Class Members conferred a monetary benefit on Defendant in that Defendant derived revenue from their labor, a precondition of which required Plaintiff and the Class Members to entrust their PII to Defendant. Without the labor and PII provided by Plaintiff and Class Members, Defendant could not derive revenue from its regular business activities. A portion of the revenue derived from the labor and PII of the Plaintiff and Class Members was to be used to provide a reasonable level of data security and practices, and the amount of revenue to be allocated to data security is known to Defendant.

161.   Defendant knew that the Plaintiff and Class Members conferred a benefit on it and Defendant accepted that benefit. Defendant derived revenue from the labor and PII of Plaintiff and the Class and rather than use a portion of that revenue to protect the PII of Plaintiff and the Class it instead diverted that money to its own profit.

162.   In particular, Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Member's PII. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profits at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security.

163.   Under the principles of equity and good conscience, Defendant should not be permitted to retain the profits it wrongfully derived from the Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

164.   Defendant failed to secure Plaintiff's and Class Members' PII and, therefore, did not provide full compensation for the benefit Plaintiff and Class

Members provided. Defendant has money in its hands that in equity and good conscience, it should not be permitted to retain.

165.   Defendant acquired the PII through inequitable means in that it failed to disclose the inadequate security practices previously alleged and that it diverted money intended to protect Plaintiff and the Class to its own profits.

166.   If Plaintiff and Class Members knew that Defendant had not reasonably secured their PII, they would not have agreed to provide their PII or labor to Defendant.

167.   The Plaintiff and Class Members have no adequate remedy at law.

168.   As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (a) actual identity theft; (b) the loss of the opportunity of how their PII is used; (c) the compromise, publication, and/or theft of their PII; (d) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII; (e) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (f) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PII in their continued possession; and (g) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of the Plaintiff and Class Members.

169.   As a direct and proximate result of Defendant's conduct, the Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

00126374.000

170.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of the Plaintiff and Class members, proceeds that they unjustly received from them.

### F.    COUNT VI – CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code § 17200, *et seq.*

171.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

172.    Defendant violated Cal. Bus. Prof. Code § 17200 et seq. by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair competition" as defined in Cal. Bus. Prof. Code § 17200, including but not limited to the following:

      a.    Defendant engaged in deceptive acts and practices by representing and advertising that they would maintain adequate data privacy and security practices and procedures to safeguard employees' PII from unauthorized disclosure, release, data breach, and theft; representing and advertising that they did and would comply with the requirement of relevant federal and state laws pertaining to the privacy and security of the Plaintiff's and Class Member's PII; and omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for the Plaintiff's and Class Members' PII.

      b.    Defendant engaged in unfair acts and practices by establishing the substandard security practices and procedures described herein; by collecting the Plaintiff's and Class Members' PII as a condition of their employment with knowledge that the information would not be adequately protected; and by storing

00126374.000

Plaintiff's and Class Members' PII in an unsecure electronic environment. These unfair acts and practices were immoral unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Class Members. Defendant's practice was also contrary to legislatively declared and public policies that seek to protect consumer data and ensure that entities who collect or are entrusted with personal data utilize appropriate security measures, as reflected by laws like the FTCA, 15 U.S.C. § 45.

    c.    Defendant engaged in unfair acts and practices with respect to the collection of the Plaintiff's and Class Members' PII by failing to disclose the Data Breach in a timely and accurate manner.

173. As a direct and proximate result of Defendant's unfair and unlawful practices and acts, Plaintiff and the Class were injured and lost money or property, including but not limited to the overpayments Defendant received to take reasonable and adequate security measures (but did not), the loss of their legally protected interest in the confidentiality and privacy of their PII, additional losses described above.

174. Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard Plaintiff's and Class Members' PII and that the risk of a data breach or theft was highly likely. Defendant's actions in engaging in the above-named unfair practices and deceptive acts was negligent, knowing and willful, and/or wanton and reckless with respect to the rights of the Class.

175. Plaintiff seeks relief under Cal. Bus. & Prof. Code § 17200, e seq., including restitution to the Class of money or property that the Defendant may have acquired by means of Defendant's deceptive, unlawful, and unfair business

00126374.000

1  practices, declaratory relief, attorney fees, costs and expenses (pursuant to Cal.
2  Code Civ. Pro. § 1021.5), and injunctive or other equitable relief.

3  **G.    COUNT VII – INJUNCTIVE / DECLARATORY RELIEF**

4      176.   Plaintiff incorporates by reference all allegations of the preceding
5  paragraphs as though fully set forth herein.

6      177.   As previously alleged and pleaded, Defendant owes duties of care to
7  the Plaintiff and Class Members that require it to adequately secure their PII.

8      178.   Defendant still possesses the PII of the Plaintiff and the Class
9  Members even after their employment relationship ended and Defendant was no
10  longer required to maintain it.

11      179.   Defendant has not satisfied its obligations and legal duties to the
12  Plaintiff and the Class Members.

13      180.   According to the Notice, Defendant is taking some steps to increase
14  its data security, but it is unclear whether those steps are adequate or whether
15  Defendant intends to retain ex-employee PII. Moreover, there is nothing to
16  prevent Defendant from reversing these changes once it has weathered the
17  increased public attention resulting from this Data Breach, and to once again place
18  profits above protection.

19      181.   The Plaintiff, therefore, seek a declaration (1) that Defendant's
20  existing security measures do not comply with its contractual obligations and
21  duties of care to provide adequate, and (2) to comply with its obligations and
22  duties of care, Defendant must implement and maintain reasonable security
23  measures, including, but not limited to:

24          a.    Ordering Defendant to engage third-party security
25              auditors/penetration testers, as well as internal security
26              personnel, to conduct testing that includes simulated attacks,
27              penetration tests, and audits on Defendant's systems on a
28              periodic basis, and ordering Defendant to promptly correct any

00126374.000

1    problems or issues detected by such third-party security
2    auditors;

3    b.    Ordering Defendant to significantly increase its spending on
4    cybersecurity, including systems and personnel;

5    c.    Ordering Defendant to engage third-party security auditors and
6    internal personnel to run automated security monitoring;

7    d.    Ordering that Defendant audit, test, and train its security
8    personnel regarding any new or modified procedures;

9    e.    Ordering that Defendant purge, delete, and destroy in a
10    reasonably secure manner any PII not necessary for its
11    provisions of services;

12    f.    Ordering that Defendant conduct regular database scanning
13    and securing checks;

14    g.    Ordering Defendant to routinely and continually conduct
15    internal training and education to inform internal security
16    personnel how to identify and contain a breach when it occurs
17    and what to do in response to a breach;

18    h.    Ordering Defendant to implement and enforce adequate
19    retention policies for PII, including destroying PII as soon as it
20    is no longer necessary for it to be retained;

21    i.    Ordering Defendant to meaningfully educate its employees
22    about the threats they face as a result of the loss of their
23    financial and personal information to third parties, as well as
24    the steps they must take to protect themselves; and

25    j.    Ordering that Defendant remove former employees' PII from
26    any hard drive or server that has external (Internet) access.

27

28

00126374.000

1   **VII.  PRAYER FOR RELIEF**

2        WHEREFORE, the Plaintiff and the Class pray for judgment against

3   Defendant as follows:

4        a.    An order certifying this action as a class action under Fed. R.

5              Civ. P. 23, defining the Class as requested herein, appointing

6              the undersigned as Class Counsel, and finding that Plaintiff is a

7              proper representative of the Class requested herein;

8        b.    A judgment in favor of Plaintiff and the Class awarding them

9              appropriate monetary relief, including actual damages, punitive

10             damages, attorney fees, and such other and further relief as is

11             just and proper;

12       c.    An order providing injunctive and other equitable relief as

13             necessary to protect the interests of the Plaintiff and Class as

14             requested herein;

15       d.    An order requiring Defendant to pay the costs involved in

16             notifying the Class Members about the judgment and

17             administering the claims process;

18       e.    A judgment in favor of the Plaintiff and the Class awarding

19             them pre-judgment and post-judgment interest, reasonable

20             attorneys' fees, costs and expenses as allowable by law; and

21       f.    An award of such other and further relief as this Court may

22             deem just and proper.

23  **VIII.  DEMAND FOR JURY TRIAL**

24       Plaintiff hereby demands a trial by jury on all appropriate issues raised in

25  this Complaint.

26  //

27  //

28  //

-43-

00126374.000

1   DATED: August 8, 2023          **GREEN & NOBLIN, P.C.**

2

3

4                                  By:  _*s/ Robert S. Green*_
                                         Robert S. Green

5

6                               Emrah M. Sumer
                               2200 Larkspur Landing Circle, Suite 101

7                               Larkspur, CA 94939
                               Telephone: (415) 477-6700

8                               Facsimile: (415) 477-6710

9                               Email: gnecf@classcounsel.com

10

11                             William B. Federman
                              **FEDERMAN & SHERWOOD**

12                             10205 N. Pennsylvania Ave.
                             Oklahoma City, OK 73120

13                             -and-

14                             2926 Maple Ave., Ste. 200
                             Dallas, TX  75201

15                             Telephone: (405) 235-1560

16                             Facsimile:  (405) 239-2112
                             Email:  wbf@federmanlaw.com

17

18                             *Pro Hac Vice Application to be submitted*

19                             *Attorneys for Plaintiff*

20

21

22

23

24

25

26

27

28

00126374.000