William B. Federman (*Admitted Pro Hac Vice*)
Tanner R. Hilton (*Admitted Pro Hac Vice*)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile:  (405) 239-2112
Email:  wbf@federmanlaw.com

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION
### Lead Case No. 5:23-cv-04007-BLF

|  |  |
|---|---|
| In re: | Lead Case No. 5:23-cv-04007-BLF |
| **CUPERTINO ELECTRIC INC. LITIGATION** | **PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND TO DIRECT NOTICE TO THE SETTLEMENT CLASS** |
|  | Date: June 5, 2025 |
|  | Time: 9:00 a.m. |
|  | Courtroom: 3 |
|  | Honorable Beth L. Freeman |

cupertino - motion for

**NOTICE OF MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND TO DIRECT NOTICE TO THE SETTLEMENT CLASS**

PLEASE TAKE NOTICE that on June 5, 2025 at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Beth L. Freeman in Courtroom 3 of the above-entitled court, located at 280 South 1st Street, San Jose, California 95113,  Plaintiffs Kevin Crowl and Jay Wise (collectively, "Plaintiffs"), will and hereby do, move the Court under Federal Rule of Civil Procedure 23 for an order: (a) finding that the proposed settlement ("Settlement") is within the range of final approval as fair, reasonable, and adequate, and granting preliminary approval of the proposed Settlement; (b) approving the form and substance of the proposed notice, as well as the proposed methods of disseminating notice to the Settlement Class; (c) scheduling a final fairness hearing and relevant deadlines in connection therewith; and (d) such other and further relief as this Court deems just and proper.

This Motion is supported by the following memorandum of points and authorities, the accompanying Declaration of William B. Federman ("Federman Decl." attached as **Exhibit 1**) and the exhibits thereto, including the settlement agreement, dated February 28, 2025 ("Settlement Agreement" attached as **Exhibit A** to the Federman Decl.), all other facts the Court may or should take notice of, all files, records, and proceedings in this case, and any oral argument the Court may entertain.

Dated: February 28, 2025

> */s/ William B. Federman*
> William B. Federman
> *Admitted Pro Hac Vice*
> Tanner R. Hilton
> *Admitted Pro Hac Vice*
> **FEDERMAN & SHERWOOD**
> 10205 N. Pennsylvania Ave.
> Oklahoma City, OK 73120
> (405) 285-1560

cupertino - motion for

William B. Federman (*Admitted Pro Hac Vice*)
Tanner R. Hilton (*Admitted Pro Hac Vice*)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
Email: wbf@federmanlaw.com

[Additional Counsel Appear on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**
**Lead Case No. 5:23-cv-04007-BLF**

| | |
|---|---|
| In re:<br><br>**CUPERTINO ELECTRIC INC. LITIGATION** | Lead Case No. 5:23-cv-04007-BLF<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND TO DIRECT NOTICE TO THE SETTLEMENT CLASS**<br><br>Date: June 5, 2025<br>Time: 9:00 a.m.<br>Courtroom: 3<br>Honorable Beth L. Freeman |

## <u>TABLE OF CONENTS</u>

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY .........................1

III.  TERMS OF THE PROPOSED SETTLEMENT ..................................................3

   A.   Settlement Class Definition.............................................................................3

   B.   The Claims to be Released ..............................................................................4

   C.   Settlement Benefits.........................................................................................4

     1.   Documented Out-of-Pocket Losses .....................................................4

     2.   Credit Monitoring and Identity Theft Protection................................5

     3.   Pro Rata Alternative Cash Payment ....................................................5

     4.   Information Security Enhancements ....................................................5

   D.   Claims, Opt-Outs, and Objections..................................................................6

     1.   Claims..................................................................................................6

     2.   Opt-Outs .............................................................................................6

     3.   Objections............................................................................................7

   E.   Service Award, Attorneys' Fees, and Litigation Expenses ............................8

   F.   Proposed Notice and Claims Program............................................................8

IV.  THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ...............10

   A.   The Settlement Provides a Fair, Adequate, and Reasonable Result for Settlement Class Members. ..............................................................................10

     1.   The Strength of Plaintiffs' Case. .........................................................11

     2.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation...............11

     3.   The Risk of Maintaining Class Action Status Throughout Trial...................12

     4.   The Amount Offered Under the Settlement. ........................................12

     5.   The Extent of Discovery Completed and the Stage of the Proceedings.....................16

     6.   The Experience and Views of Counsel. ..............................................17

     7.   Rule 23(e)(2)(A): The Class Was Adequately Represented.......................17

     8.   Rule 23(e)(2)(B): The Settlement Was Negotiated at Arm's Length.....................18

     9.   Rule 23(e)(2)(C): The Relief Provided to the Class is Adequate.....................18

     10.  Rule 23(e)(2)(D): The Settlement Treats Settlement Class Members Equitably Relative to Each Other. ..............................................................19

     11.  The Settlement Also Satisfies the "*Bluetooth*" Factors..............................19

   B.   Certification of the Settlement Class is Appropriate....................................20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND TO DIRECT NOTICE TO THE SETTLEMENT CLASS

cupertino - motion for

1.     The Settlement Class Satisfies Rule 23(a). ....................................................21

2.     The Settlement Class Satisfies Rule23(b)(3)............................................24

V.   CONCLUSION.............................................................................................................25

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND TO DIRECT NOTICE TO THE SETTLEMENT CLASS

cupertino - motion for

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3   <u>**Cases**</u>

4   *Amchem Prods., Inc. v. Windsor*,
5       521 U.S. 591 (1997) ........................................................................................... 21, 25

6   *Chester v. TJX Cos., Inc.*,
        2017 WL 6205788 (C.D. Cal. Dec. 5, 2017) ........................................................ 11
7

8   *Churchill Vill., L.L.C. v. Gen Elec.*,
        361 F.3d 566 (9th Cir. 2004) ................................................................................ 10
9

10  *Class Plaintiffs v. City of Seattle*,
        955 F.2d 1268 (9th Cir. 1992) .............................................................................. 10

11  *Ellis v. Costco Wholesale Corp.*,
        657 F.3d 970 (9th Cir. 2011) ........................................................................... 22, 23
12

13  *Fulton-Green v. Accolade, Inc.*,
        2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ...................................................... 12
14

15  *Hanlon v. Chrysler Corp.*,
        150 F.3d 1011 (9th Cir. 1998) .............................................................................. 10

16  *Hart v. Colvin*,
        2016 WL 6611002 (N.D. Cal. Nov. 9, 2016)....................................................... 10
17

18  *Hillman v. Lexicon Consulting, Inc.*,
        2017 WL 10433869 (C.D. Cal. April 27, 2017) .................................................. 16
19

20  *In re Bluetooth Headset Prods. Liability Litig.*,
        654 F.3d 935 (9th Cir. 2011)................................................................................ 20
21

22  *In re Google LLC St. View Elec. Commc'ns Litig.*,
        2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) .................................................... 24
23  *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
24      293 F.R.D. 21 (D. Me. 2013) ............................................................................... 12

25  *In re Immune Response Sec. Litig.*,
        497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................................ 17
26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND TO DIRECT
NOTICE TO THE SETTLEMENT CLASS

*In re LDK Solar Sec. Litig.*,
    255 F.R.D. 519 (N.D. Cal. 2009) .................................................. 23

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ...................................................... 10

*In re Tableware Antitrust Litig.*,
    484 F.Supp.2d 1078 (N.D. Cal. 2007) ......................................... 10

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*,
    2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ............................... 22

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ................................................ 24, 25

*Krommenhock v. Post Foods, LLC*,
    334 F.R.D. 552 (N.D. Cal. 2020) .................................................. 21

*Larsen v. Trader Joe's Co.*,
    2014 WL 3404531 (N.D. Cal. July 11, 2014) ........................... 12, 13

*Linney v. Cellular Alaska Partnership*,
    151 F.3d 1234 (9th Cir. 1998) ...................................................... 16

*Meyer v. Portfolio Recovery Assocs., LLC*,
    707 F.3d 1036 (9th Cir. 2012) ...................................................... 22

*Nat'l Rural Telecomms Cooperative v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .................................................. 12

*Pygin v. Bombas, LLC*,
    2021 WL 6496777 (N.D. Cal. Nov. 29, 2021) .............................. 13

*Riker v. Gibbons*,
    2010 WL 4366012 (D. Nev. Oct. 28, 2010) .................................. 17

*Rollins v. Dignity Health*,
    336 F.R.D. 456 (N.D. Cal. 2020) .................................................. 10

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ...................................................................... 24

*Wolin v. Jaguar Land Rover N. Am. LLC*,
    617 F.3d 1168 (9th Cir. 2010) ...................................................... 25

**Rules**

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND TO DIRECT
NOTICE TO THE SETTLEMENT CLASS

cupertino - motion for

Fed. R. Civ. P. 23 ................................................................................................ 2, 1, 10

Fed. R. Civ. P. 23(a)(1) ................................................................................................ 21

Fed. R. Civ. P. 23(a)(2) ................................................................................................ 22

Fed. R. Civ. P. 23(a)(3) ................................................................................................ 22

Fed. R. Civ. P. 23(a)(4) ................................................................................................ 23

Fed. R. Civ. P. 23(b)(3) ............................................................................................ 24, 25

Fed. R. Civ. P. 23(e) ................................................................................................ 10

Fed. R. Civ. P. 23(e)(2) ............................................................................................ 2, 10

**Other Authorities**

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §11:47 (4th ed. 2002) .......... 17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND TO DIRECT NOTICE TO THE SETTLEMENT CLASS

cupertino - motion for

## I.    INTRODUCTION

Plaintiffs Kevin Crowl and Jay Wise ("Plaintiffs") respectfully move under Federal Rule of Civil Procedure ("Rule") 23 for preliminary approval of a class action settlement between Plaintiffs and Defendant Cupertino Electric, Inc. ("Cupertino" or "Defendant") (together with Plaintiffs, the "Parties"). The proposed Class Action Settlement Agreement (the "Agreement" or "Settlement Agreement"),[1] if approved, will resolve the claims asserted by Plaintiffs and the Settlement Class Members and will provide substantial monetary and injunctive relief to Settlement Class Members whose personally identifiable information ("PII") may have been compromised in a data security incident occurring between June 14, 2023 and June 24, 2023 (the "Data Security Incident").[2]

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Between June 14, 2023, and June 24, 2023, Cupertino suffered the Data Security Incident in which unauthorized hackers accessed and acquired information pertaining to current and former employees of Defendant. *See* Plaintiffs' Amended Consolidated Class Action Complaint ("Compl.") ¶ 1. The PII compromised in the Data Security Incident included names, addresses, Social Security numbers, driver's license numbers, and dates of birth. *Id*. ¶ 2. On August 8, 2023, Plaintiff Kevin Crowl filed the first class action complaint against Cupertino in the United States District Court for the Northern District of California, asserting claims arising out of the Data

---

[1] The Class Action Settlement Agreement is attached as Exhibit A to the Declaration of William B. Federman in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Federman Decl."), attached hereto as Exhibit 1. Unless otherwise noted, capitalized terms have the same meaning assigned to them in the Settlement Agreement ("SA").

[2] To the best of Class Counsel's knowledge, there are no other cases pending in the Northern District of California, or any other federal or state court in the United States, naming Cupertino as a defendant in relation to the Data Security Incident that would be affected by the Settlement.

cupertino - motion for

Security Incident. *See Crowl v. Cupertino Electric, Inc.*, No. 5:23-cv-04007-BLF (N.D. Cal.). Subsequently, on August 18, 2023, Plaintiff Jay Wise also filed a class action complaint against Cupertino in the United States District Court for the Northern District of California, asserting claims arising out of the Data Security Incident. *See Wise v. Cupertino Electric, Inc.*, 5:23-cv-04232-BLF (N.D. Cal.). On December 6, 2023, the Court consolidated the two actions for all purposes into *In re: Cupertino Electric Inc. Litigation*, Case No. 5:23-cv-04007-BLF (N.D. Cal.) before the Honorable Beth L. Freeman, U.S.D.J.

On February 1, 2024, Plaintiffs Kevin Crowl and Jay Wise filed their Consolidated Class Action Complaint (ECF No. 28), and on August 14, 2024, the Court granted in part and denied in part Defendant's Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint and granted Plaintiffs' leave to amend (ECF No. 69). In response, Plaintiffs filed their Amended Consolidated Class Action Complaint on September 13, 2024 (ECF No. 75). Beginning in September 2024 and continuing through November 2024, the Parties engaged in meaningful arm's-length settlement negotiations, while continuing to brief Defendant's Motion to Dismiss Plaintiffs' Amended Consolidated Class Action Complaint. Federman Decl. ¶ 7. Finally, on November 22, 2024, the Parties reached a settlement in principle to resolve and release on a class-wide basis all claims against Cupertino. *Id*. On November 27, 2024, the Parties notified the Court of the settlement in principle (ECF No. 87).

Although Plaintiffs and Class Counsel believe that the factual and legal claims asserted in the Action are meritorious, Plaintiffs and Class Counsel recognize the outcome and claims asserted in the Action are uncertain, and that litigating to final judgment would entail a substantial cost, risk, and delay of benefits for Plaintiffs and all Settlement Class Members. Class Counsel investigated the facts relating to the claims and defenses alleged and the underlying events in the

cupertino - motion for

Action, have made a thorough study of the legal principles applicable to the claims and defenses asserted, and have conducted a thorough assessment of the strengths and weaknesses of the claims in the Action. After this thorough analysis, Plaintiffs and Class Counsel concluded that it would be in the best interests of the Settlement Class to enter into this Agreement, which includes the substantial value to be derived by this Settlement and the interests of avoiding the uncertainties of litigation and assuring that the benefits reflected herein are obtained for the Settlement Class.

Therefore, the Parties consider the Settlement set forth herein to be fair, reasonable and adequate and in the best interests of the Settlement Class and the Court should preliminarily approve this Settlement.

## III.    TERMS OF THE PROPOSED SETTLEMENT

The Settlement negotiated on behalf of the Settlement Class establishes a $740,520.00 non-reversionary Settlement Fund, which will be used to pay for: (i) Administrative Expenses; (ii) Fee Awards, Expenses, and Service Awards as awarded by the Court; and (iii) valid claims for Documented Out-of-Pocket Losses, Credit Monitoring and Identity Theft Protection Services, and a pro rata Alternative Cash Payment. SA ¶ 3.2.

### A.    Settlement Class Definition

For settlement purposes only, Plaintiffs propose certification of the following class:

All residents of the United States who were sent notice that their personal information was accessed, stolen, or compromised as a result of the Data Security Incident. The Settlement Class specifically excludes: (i) Cupertino, any Entity in which Cupertino has a controlling interest, and Cupertino's partners, officers, directors, legal representative, successors, and assigns; (ii) any judge, justice, or judicial officer presiding over the Action and members of their immediate families and judicial staff; and (iii) any individual who timely and validly opts out of the Settlement.

SA ¶ 2.39. The scope of the Settlement Class resembles the class definition pled in Plaintiffs' Amended Consolidated Complaint but differs in that it is limited to individuals who were sent

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND TO DIRECT NOTICE TO THE SETTLEMENT CLASS

notice by Cupertino that their PII was compromised in the Data Security Incident. The Class in Plaintiffs' Amended Consolidated Complaint was defined as:

> All natural persons residing in the United States whose PII was compromised and/or stolen from Defendant's systems between June 14, 2023 and June 24, 2023, or prior, and who: (1) experienced identity theft and/or fraud that is fairly traceable to the Data Breach; (2) incurred reasonable expenses mitigating the consequences of the Data Breach; (3) spent time and effort mitigating the consequences of the Data Breach; and/or (4) experienced the unauthorized publication of their PII fairly traceable to the Data Breach.

*See* ECF No. 75, p. 39. The difference in scope of the Settlement Class and the class alleged in Plaintiffs' Amended Consolidated Complaint is appropriate. Consistent with its legal notice requirements, Defendant informed Plaintiffs and Class Counsel that it has notified individuals whose PII was impacted in the Data Security Incident and, as such, the Settlement Class proposed in the Settlement Agreement accurately identifies members of the class.

### B. The Claims to be Released

Consistent with the allegations in the Plaintiffs' Amended Consolidated Class Action Complaint, the Settlement Agreement releases the claims identified in paragraph 2.31 of the Settlement Agreement. SA ¶ 2.31. This also includes Plaintiffs' claims for negligence, breach of implied contract, and injunctive relief and declaratory judgment. *See* ECF No. 75, p. 44-58.

### C. Settlement Benefits

#### 1. Documented Out-of-Pocket Losses

All Settlement Class Members may submit a claim for up to $5,000.00 for reimbursement of Documented Out-of-Pocket Losses. SA ¶ 7.1.2. To receive reimbursement for Documented Out-of-Pocket Losses, Settlement Class Members must submit a valid Claim Form that includes the following: (i) third-party documentation supporting the loss; and (ii) a brief description of the documentation describing the nature of the loss, if the nature of the loss is not apparent from the documentation alone. *Id.* Third-party documentation can include receipts or other documentation

-4-

cupertino - motion for

not "self-prepared" by the Settlement Class Member. *Id*. Self-prepared documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation. *Id*.

### 2. Credit Monitoring and Identity Theft Protection

Next, all Settlement Class Members are eligible to make a claim for two (2) years of credit monitoring and identity protection services, which shall include: (i) three bureau credit monitoring, (ii) report and score, (iii) dark web monitoring, (iv) identity theft protection services, (v) identity resolution services, and (vi) $1,000,000.00 in identity theft insurance. *Id*. ¶ 7.1.1.

### 3. Pro Rata Alternative Cash Payment

Finally, in the alternative and in lieu of submitting a claim for out-of-pocket losses (SA ¶ 7.1.2), Settlement Class Members may elect to submit a claim for a pro rata cash payment from the Residual Settlement Fund. SA ¶ 7.1.3. To receive the pro rata Alternative Cash Payment, Settlement Class Members must submit a valid Claim Form indicating the selection of an Alternative Cash Payment. *Id*. The choice to receive an Alternative Cash Payment does not preclude Class Representatives from receiving a Court approved Service Award Payment and does not preclude Settlement Class Members from receiving Credit Monitoring and Identity Theft Protection Services. *Id*.

### 4. Information Security Enhancements

In addition to the monetary relief described above, Class Counsel has negotiated, and Defendant agrees to provide Class Counsel with a declaration estimating the costs associated with implementing improved data security measures over the next three (3) years within sixty (60) days from the Court's entry of the Preliminary Approval Order. SA ¶ 8.1. Specifically, Cupertino's improved data security measures will include the implementation of a records

management process that tracks the storage and disposition of records through their designated legal retention period. *Id.*

### D.    Claims, Opt-Outs, and Objections

The timing of the claims process was structured to ensure that all Settlement Class Members had adequate time to review the terms of the Settlement Agreement, make a claim, or decide whether they would like to opt-out or object.

#### 1.    Claims

Settlement Class Members shall have ninety (90) days from the Notice Date to complete and submit a claim to the Settlement Administrator. SA ¶ 2.8. Settlement Class Members making claims for any of the relief under the Settlement Agreement must complete and submit a written Claim Form to the Settlement Administrator, postmarked (or, if submitted electronically in accordance with the requirements for electronic submission of a Claim Form, the date of such submission) on or before the Claims Deadline. *Id.* ¶ 7.2. The Claim Form must be verified by the Settlement Class Member with a statement that his or her Settlement Claim is true and correct, to the best of his or her knowledge and belief, and is being made under penalty of perjury. *Id.*

#### 2.    Opt-Outs

Settlement Class Members shall have sixty (60) days after the Notice Date to submit a written request to be excluded from the Settlement. SA ¶ 2.25. The written request for exclusion, which can also be submitted through the Settlement Website's claims portal, must: (i) identify the case name of the Action; (ii) identify the name and address of the individual seeking exclusion from the Settlement; (iii) be personally signed by the individual seeking exclusion; (iv) include a statement clearly indicating the individual's intent to be excluded from the Settlement; and (v) request exclusion only for that one individual whose personal signature appears on the request.

*Id.* ¶ 16.2. Further, any individual who submits a valid and timely request for exclusion in the manner described herein shall not: (i) be bound by any orders or judgments entered in connection with the Settlement; (ii) be entitled to any relief under, or be affected by, the Agreement; (iii) gain any rights by virtue of the Agreement; or (iv) be entitled to object to any aspect of the Settlement. *Id.* ¶ 16.5.

### 3.     Objections

Settlement Class Members shall have sixty (60) days after the Notice Date to submit an objection to the Settlement. SA ¶ 2.24. The written objection must include: (i) the case name and number of the Action; (ii) documentation evidencing the objector's status as a Settlement Class Member, such as a breach notice letter addressed to the objector; (iii) the name, address, and telephone number of the objecting Settlement Class Member and, if represented by counsel, of his or her counsel; (iv) a statement of whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (v) a statement of the number of times in which the objector (and, where applicable, objector's counsel) has objected to a class action settlement within the three years preceding the date that the objector files the objection, along with the caption of each case in which the objector has made such objection; (vi) a statement of the specific grounds for the objection; and (vii) a statement of whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, and if so, whether personally or through counsel. *Id.* ¶ 17.2. In addition to the foregoing requirements, if an objecting Settlement Class Member intends to speak at the Final Approval Hearing (whether *pro se* or through an attorney), the written objection must include a detailed description of any evidence the objecting Settlement Class Member may offer at the Final Approval Hearing, as well as copies of any exhibits the objecting Settlement Class Member may introduce at the Final Approval Hearing. *Id.* ¶ 17.3.

cupertino - motion for

### E.    Service Award, Attorneys' Fees, and Litigation Expenses

As compensation for the substantial benefit conferred upon the Settlement Class Members, Class Counsel shall submit a request to the Court for the payment of Attorneys' Fees, expressed as a percentage of the value conferred by the Settlement to the Settlement Class Members, and for reimbursement of Expenses incurred in prosecuting and settling the Action. SA ¶ 19.1. Class Counsel will request, and Cupertino agrees not to oppose, Class Counsel's request of reasonable attorneys' fees totaling 25% of the total value of the Settlement and reasonably incurred litigation expenses and costs, not to exceed $40,000. *Id*. ¶ 19.2. The expert costs incurred by Plaintiffs in this case alone total over $7,000. *See* Federman Decl. ¶ 13.  To date, Class Counsel's lodestar is currently $208,221 with 352.47 hours of work. *Id*. Class Counsel's maximum expense figure is based on their current expenses and estimates of incurred expenses that have not yet been invoiced, and expenses that will be incurred between now and the filing of Class Counsel's application for award of attorneys' fees and expenses. Class Counsel negotiated a valuable settlement, which includes a Settlement Fund of $740,520 ($30 per-person recovery) and meaningful injunctive relief, which is separate and in addition to the Settlement Fund. SA ¶ 8. Further, the Settlement Class Representatives and Class Counsel shall submit a request to the Court for payment of Service Awards, not to exceed three thousand dollars ($3,000.00) per individual, to the Settlement Class Representatives. SA ¶ 18.1.

### F.    Proposed Notice and Claims Program

The cost of class notice and settlement administration will be paid from the Settlement Fund (subject to the Court's approval). SA ¶ 3.2. Following the Court's entry of Preliminary Approval, Defendant shall provide the Settlement Administrator, Simpluris, Inc. ("Simpluris") with available contact information for the Settlement Class Members. *Id*. ¶ 10.1. The Settlement

-8-

cupertino - motion for

Class Member information and its contents shall be used by the Settlement Administrator solely for the purpose of performing its obligations under the Settlement Agreement and shall not be used for any other purpose. *See* Declaration of Simpluris, Inc. ("Settlement Admin. Decl.") ¶ 16, attached hereto as **Exhibit 2**. Except to administer its responsibilities under the Settlement Agreement or provide all data and information in its possession to the Parties upon request, the Settlement Administrator shall not reproduce, copy, store, or distribute in any form, electronic or otherwise, Settlement Class Member data. *Id*. ¶¶ 17, 18. The Settlement Administrator shall delete any and all Settlement Class Member data associated with the Litigation when it no longer has a legal requirement to retain such information. *Id*. ¶ 18. Simpluris accepts responsibility for the security of Settlement Class Members' information and data and has affirmed that it will not use or disclose Settlement Class Members' information to any other person, except to administer its responsibilities under the Settlement Agreement. *Id*. ¶ 17. Simpluris maintains insurance in the event errors are made, including E&O and cybersecurity policies. *Id*. ¶ 19.

Proposed Class Counsel selected the Settlement Administrator after soliciting bids from four (4) potential settlement administrators, all of whom submitted responses. *See* Federman Decl. ¶ 14. Mail, email, and reminder notice methods were proposed by each of the potential settlement administrators. *Id*. ¶ 15. Over the past two years, Class Counsel has used Simpluris as a settlement administrator for new settlement engagements eight (8) times. *Id*. ¶ 16. Simpluris anticipates a claims rate range of 2-4% based on its experience administering data privacy class action settlements. Settlement Admin. Decl. ¶ 25. This is consistent with claims rates in other comparable data privacy settlements with similar class sizes and settlement structures, which also range between 2-4%. *Id*. Finally, Simpluris anticipates administration expenses to range between $48,440-$59,992, which shall be paid out from the Settlement Fund. *Id*. ¶ 20.

-9-

cupertino - motion for

## IV.     THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

"The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions." *Hart v. Colvin*, No. 15-cv-00623-JST, 2016 WL 6611002, at *4 (N.D. Cal. Nov. 9, 2016) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). Under Federal Rule of Civil Procedure ("Rule") 23, at the preliminary approval stage, the Court is charged with determining if the proposed settlement is "fair, reasonable, and adequate", and whether the settlement falls "within the range of possible approval." Fed. R. Civ. P. 23(e)(2); *see also In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Therefore, "the proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class." *Rollins v. Dignity Health*, 336 F.R.D. 456, 461 (N.D. Cal. 2020) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)).

In determining whether a proposed settlement is fair, reasonable, and adequate, the Court must consider the factors identified in Rule 23(e)(2). Fed. R. Civ. P. 23(e)(2). Further, the Ninth Circuit has instructed district courts to also consider several additional factors, including:

> (A) the strength of the plaintiff's case; (B) the risk, expense, complexity, and likely duration of further litigation; (C) the risk of maintaining class action status throughout the trial; (D) the amount offered in the settlement; (E) the extent of discovery completed and the stage of the proceedings; (F) the experience and views of counsel.

*Hanlon*, 150 F.3d at 1026; *see also Churchill Vill., L.L.C. v. Gen Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Therefore, for the following reasons, the proposed Settlement is fair, reasonable, and adequate, and the Court should grant preliminary approval and issue notice to the Settlement Class Members.

### A.     The Settlement Provides a Fair, Adequate, and Reasonable Result for

-10-

cupertino - motion for

Settlement Class Members.

### 1.    The Strength of Plaintiffs' Case.

Although Plaintiffs are confident in their claims, Plaintiffs understand that data breach class actions are notoriously risky cases considering the evolving nature of the law in this area. The risk in this data breach class action is further exacerbated due to the fact that Plaintiffs' Consolidated Class Action Complaint was already dismissed in part by this Court, which included the dismissal of Plaintiffs' class allegations. *See* ECF No. 69. Although confident in the claims asserted, Plaintiffs will face challenges, such as surviving Defendant's pending Motion to Dismiss and Strike Class Allegations (ECF No. 83), and securing and maintaining class certification. The Parties' proposed settlement allows the Settlement Class Members to obtain benefits within the near future—as opposed to potentially waiting years—and eliminates the possibility that the Settlement Class Members receive no benefit. Therefore, considering the risks Plaintiffs face going forward, the relief provided by the Parties' proposed settlement is well balanced against the hurdles Plaintiffs will have to overcome to successfully litigate this case.

### 2.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation.

The risk, expense, complexity, and duration of further litigation favors the approval of the Parties' proposed settlement. As discussed above, while Plaintiffs are confident in their claims, their success is not guaranteed. "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos., Inc.*, No. 5:15-cv-01437-ODW, 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). By reaching a settlement now, Plaintiffs seek to avoid significant expense, delay, and ensure a guaranteed recovery for the Settlement Class Members. Continuing litigation would require the resolution of Defendant's Motion to Dismiss and Strike Class Allegations (ECF No. 83), and

-11-

cupertino - motion for

prolonged discovery, including numerous depositions, written discovery, and further expert discovery. Further, considering Defendant fully opposes Plaintiffs' claims, Plaintiffs face inherent risks associated with data breach class actions, including class certification, summary judgment, trial, and the potential appeal of an adverse decision. As this Court has found, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) (quoting *Nat'l Rural Telecomms Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)).

### 3.    The Risk of Maintaining Class Action Status Throughout Trial.

Assuming the Court were to grant a motion for class certification, Plaintiffs face significant risk in maintaining a class through trial. This is especially true where, like this case, the Court has already dismissed Plaintiffs' class allegations following Defendant's first Motion to Dismiss and Strike Class Allegations. *See* ECF No. 69.[3] Defendant certainly opposes the certification of a class and if the case were to proceed, there is a risk that Plaintiffs would be unable to certify a class and maintain certification of such class through trial. In fact, as discussed above, data breach class actions are notoriously risky cases and face hurdles surviving the class certification stage. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013); *Fulton-Green v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting that data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare.").

### 4.    The Amount Offered Under the Settlement.

---

[3] The Court dismissed Plaintiffs' class allegations **without prejudice** (ECF No. 69) and Plaintiffs filed their Amended Consolidated Class Action Complaint (ECF No. 75) on September 13, 2024.

-12-

The amount offered under the Settlement factor "examines the benefits to class members." *Larsen*, 2014 WL 3404531, at *4. As discussed above, each Settlement Class Member is eligible to make a claim for monetary benefits out of the $740,520.00 non-reversionary Settlement Fund. SA ¶¶ 7.1.2; 7.1.3. In addition, Plaintiffs have negotiated the implementation of certain improved data security measures to be maintained by Defendant that have substantial value to the Settlement Class Members. *Id.* ¶ 8.1. The Settlement is an excellent result considering other settlements that have been approved in data breach cases in this district and other California federal courts. *See Pygin v. Bombas, LLC*, No. 20-cv-04412-JSW, 2021 WL 6496777 (N.D. Cal. Nov. 29, 2021) (granting final approval of $225,000 non-reversionary common fund on behalf of a 83,000 person class, which is a per-person recovery of approximately $2.71 per class member); *In re: Ethos Tech. Inc. Data Breach Litigation*, No. 3:22-cv-09203-SK (N.D. Cal. Sept. 6, 2024) (ECF No. 68) (finally approving a $1,000,000 settlement fund on behalf of a 36,000 person class, which is a per-person recovery of approximately $27.00 per class member); *Gupta, et al. v. Aeries Software, Inc.*, No. SA CV 20-0995 FMO, (C.D. Cal. March 3, 2023) (ECF No. 110) (granting final approval of $1,750,000 non-reversionary common fund on behalf of a 98,910 person class, which is a per-person recovery of approximately $17.70 per class member). Further, the benefits made available under the Settlement give Plaintiffs and Class Members cash, reimbursement for their out-of-pocket losses, credit monitoring, and meaningful cybersecurity enhancements, which is beyond what Class Members would be seeking on their best day in Court.

**Other Comparable Outcomes**

| Case | *In re: Ethos Tech. Inc. Data Breach Litigation* (N.D. Cal.) | *In re: Snap Finance Data Breach Litigation* (D. Utah) | *In re: Cupertino Electric Inc. Litigation* |
|---|---|---|---|

| Class Size | 36,000 | 60,902 | 24,684 |
|---|---|---|---|
| **Information Disclosed** | Social Security numbers | Names, Social Security numbers, driver's license numbers, state identification numbers, and financial account numbers. | Names, addresses, Social Security numbers, driver's license numbers, and dates of birth. |
| **Total Settlement Fund** | $1,000,000 | $1,800,000 | $740,520 |
| **Out-of-Pocket Losses** | Up to $5,000 | Up to $5,000 | Up to $5,000 |
| **Pro Rata Cash Payment** | $100 – shall be increased or decreased based on residual Settlement Fund | Pro Rata Cash Payment from residual Settlement Fund – not to exceed $500. | Pro Rata Cash Payment From Residual Settlement Fund (uncapped). |
| **Credit Monitoring** | 1 year of Experian Monitoring Services | 2-Years of Pango Identity Defense Complete. | 2-Years with 3-Bureau Credit Monitoring |
| **Per-Person Recovery** | $27.00 | $29.50 | $30.00 |
| **Attorneys' Fees** | 33% | 30% | Up to 25% |
| **Claims Being Released** | Negligence, Invasion of Privacy, Unjust Enrichment, Violations of the California Unfair Competition Law, Declaratory Judgment, and Violations of the California Consumer Protection Act. | Negligence, Negligence Per-Se, Breach of Implied Contract, Invasion of Privacy, Unjust Enrichment, Declaratory and Injunctive Relief, Violation of the California Consumer Protection Act, and Violations of the California Unfair Competition Law. | Negligence, Breach of Implied Contract, Injunctive Relief and Declaratory Judgment. |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND TO DIRECT NOTICE TO THE SETTLEMENT CLASS

cupertino - motion for

Similar to this case, both *Ethos Tech.* and *Snap Financial* created non-reversionary settlement funds, which were used to pay all claims, the settlement administrator, attorneys' fees, expenses, and service awards. *See In re: Ethos Tech. Data Breach Litigation*, Case No. 3:22-cv-09203-SK (N.D. Cal.) (ECF No. 68); *In re: Snap Finance Data Breach Litigation*, Case No. 2:22-cv-00761-TS-JCB (D. Utah) (ECF No. 57). Here, the Settlement provides substantially similar, if not better, benefits to the Settlement Class than the finally approved settlements in *Ethos Tech.* and *Snap Financial*. Therefore, the Settlement represents an outstanding outcome for the Settlement Class Members, especially when compared to other similar settlements that have been finally approved by this Court and others.

### Comparison of Settlement Benefits Against Full Recovery

The benefits to Settlement Class Members under the Settlement provide cash, reimbursement for out-of-pocket losses, free credit monitoring for two (2) additional years, and improved data security enhancements.

If Plaintiffs prevailed at trial, they would have sought recovery for their out-of-pocket losses and the cost of obtaining credit monitoring. Plaintiffs believe that the $5,000 cap for out-of-pocket losses will likely make each Settlement Class Member whole. According to the Federal Trade Commission's Identity Theft Survey Report, 85% of identity theft victims report the misuse of existing accounts and 17% of victims report new accounts being opened in their name.[4] Identity theft victims who had misuse of their existing accounts, the average out-of-pocket loss was $500, while the average loss for improperly opened accounts was $1,200.[5] Further, only 6% of victims who had improper use of existing accounts of $1,000 or more, and only 16% of those that had

---

[4] *See* https://www.ftc.gov/sites/default/files/documents/reports/federal-trade-commission-identity-theft-program/synovatereport.pdf

[5] *Id.*

-15-

cupertino - motion for

accounts opened in their name had losses of $1,000 or more.[6] Therefore, the recovery available under the Settlement Agreement for out-of-pocket losses of up to $5,000 or a pro rata Alternative Cash Payment provides the overwhelming majority of Settlement Class Members the opportunity to be made whole.

### 5.     The Extent of Discovery Completed and the Stage of the Proceedings.

Prior to entering into settlement discussions on behalf of Settlement Class Members, Class Counsel should have "sufficient information to make an informed decision." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998). In the eighteen (18) months since the commencement of this case, the Parties exchanged initial disclosures, briefed multiple rounds of motions to dismiss and strike class allegations, and briefed discovery motions following the propounding of formal discovery requests by Plaintiffs in May of 2024. Federman Decl. ¶ 16. Further, Plaintiffs engaged and retained data privacy expert, Mary Frantz, to review and assess Defendant's cybersecurity and online presence. *Id*. ¶ 13. Specifically, Plaintiffs' expert provided Plaintiffs and the Court (ECF No. 75-1) with a detailed declaration describing her findings following a public, historical scan of Defendant's domain. *Id*. ¶ 13. Further, Class Counsel's experience in similar data breach class actions provided substantive knowledge on the subject matter of the case, enabling Class Counsel to evaluate the risks and value of the litigation and adequately represent Plaintiffs' and Class Members' interests without expending substantial resources and hours coming up to speed on the subject area. *Id*. ¶¶ 4-6. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting…approval." *Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-VAP, 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2017). Therefore, Class Counsel is well informed about the

---

[6] *Id*.

cupertino - motion for

strengths and weaknesses of this case.

### 6.    The Experience and Views of Counsel.

"The recommendation of experienced counsel in favor of settlement carries a 'great deal of weight' in a court's determination of the reasonableness of a settlement." *Riker v. Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012, at \*4-5 (D. Nev. Oct. 28, 2010) (citing *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007)). "'The weight accorded to the recommendation of counsel is dependent on a variety of factors; namely, length of involvement in litigation, competence, experience in the particular type of litigation, and the amount of discovery completed.'" *Id.* at \*4 (quoting 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §11:47 (4th ed. 2002)). Class Counsel initiated this class action lawsuit on behalf of Plaintiffs and the Class Members after Defendant announced the Data Breach involving approximately 24,684 individuals. Class Counsel has substantial experience litigating data breach class action cases (Federman Decl. ¶¶ 4-6) and, after working on behalf of the Settlement Class Members since the Data Security Incident was first announced, has evaluated the legal and factual disputes and fully supports the Parties' Agreement. *Id.* ¶ 7. Therefore, this factor supports preliminary approval.

### 7.    Rule 23(e)(2)(A): The Class Was Adequately Represented.

This factor weighs heavily in favor of granting preliminary approval because both Class Counsel and Plaintiffs have adequately represented the Class. Class Counsel have adequately represented the Class by: (i) fully investigating the facts and legal claims; (ii) preparing the initial complaints, a Consolidated Complaint (ECF No. 28), and an Amended Consolidated Complaint (ECF No. 75); (iii) briefing multiple oppositions to Defendant's motions to dismiss and strike class allegations (ECF Nos. 40; 85); (iv) engaging and retaining cybersecurity expert Mary Frantz

-17-

to assess and report on Defendant's data security; and (v) participating and negotiating in months long settlement negotiations with Defendant and its counsel. Federman Decl. ¶ 12. Additionally, Plaintiffs have also demonstrated their adequacy by: (i) selecting well-qualified Class Counsel; (ii) producing information and documents to Class Counsel to permit investigation and development of the pleadings; (iii) being available as needed throughout the litigation; and (iv) monitoring the litigation. *Id*. Therefore, this factor weighs in favor of preliminary approval.

### 8.    Rule 23(e)(2)(B): The Settlement Was Negotiated at Arm's Length.

The proposed settlement was negotiated at arm's length and without collusion. Federman Decl. ¶ 10. In fact, beginning in September 2024, after the filing of Plaintiffs' Amended Consolidated Complaint (ECF No. 75), the Parties began preliminary settlement negotiations and agreed to extend Defendant's deadline to file a motion to dismiss over the next month to allow sufficient time for a meaningful attempt at reaching an agreement. *Id*. ¶ 9. However, the Parties were unable to reach an agreement and proceeded with fully briefing Defendant's second Motion to Dismiss and Strike Class Allegations. *Id*. Following the briefing of Defendant's second Motion to Dismiss and Strike Class Allegations, the Parties continued their settlement negotiations and, on November 22, 2024, reached a settlement in principle to resolve and release on a class-wide basis all claims against Defendant. *Id*. Therefore, the fact the Agreement was achieved through well-informed, arm's length negotiations weighs in favor of granting preliminary approval under Rule 23(e)(2)(B).

### 9.    Rule 23(e)(2)(C): The Relief Provided to the Class is Adequate.

As discussed above, when considering the likelihood of success at trial, the complexity, expense, and duration of the litigation, the relief provided is exceptionally reasonable. The Agreement provides Settlement Class Members multiple opportunities to make a claim for

-18-

monetary benefits out of the $740,520.00 non-reversionary Settlement Fund. SA ¶¶ 7.1.2; 7.1.3. This case has the potential to proceed for many more years considering voluminous discovery would be needed from Defendant and any third-party companies that Defendant has used in an information technology capacity. Additional experts would need to be retained and provide testimony concerning Defendant's data security practices, industry standard practices, and how its practices deviated therefrom. Substantial fact-finding would be required into what information was taken, how, and what impact this had and will have on the Settlement Class. Further, Plaintiffs would need to survive potential dispositive motions, including Defendant's pending Motion to Dismiss and Stike Class Allegations (ECF No. 83), and also prevail on a motion for class certification. Such motion practice, and potential appeals, could consume years, during which the law could change and threaten Plaintiffs' and Class Members' claims. Given the complexity of the claims and arguments here, a lengthy trial would certainly follow. Litigation would be extraordinarily complex, and it could take several years for the Class to see any real recovery, if any at all.

### 10.    Rule 23(e)(2)(D): The Settlement Treats Settlement Class Members Equitably Relative to Each Other.

The Parties' proposed Agreement treats the Settlement Class Members equitably relative to each other. Here, all Settlement Class Members had their PII compromised in the Data Security Incident, and all will have the same remedy and equal opportunity to claim the benefits of the Parties' proposed Agreement.

### 11.    The Settlement Also Satisfies the "*Bluetooth*" Factors.

Settlements achieved prior to formal class certification must withstand an even greater level of scrutiny for potential collusion under the *Bluetooth* factors, which include: (i) whether counsel receives a disproportionate distribution of the settlement and the class receives no

cupertino - motion for

monetary distribution; (ii) whether the parties included a "clear sailing provision"; and (iii) whether funds awarded revert to the defendant rather than being added to the class fund. *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Here, evaluation of the *Bluetooth* factors overwhelmingly supports the reasonableness of the Settlement.

Here, Settlement Class Members have multiple opportunities to receive monetary distributions (SA ¶¶ 7.1.2; 7.1.3) and this is not a settlement in which the entire class will "receive[] no monetary distribution but class counsel are amply awarded." *In re Bluetooth*, 654 F.3d at 946. Further, Class Counsel requests a fee of 25% of the value of the Settlement plus a capped reimbursement of reasonable expenses and does not include a "clear sailing" provision. *Id*. Rather, all attorneys' fees will be paid solely from the Settlement Fund, not by Cupertino in exchange for Plaintiffs' acceptance of an unfair class settlement. *Id*. Finally, this settlement is non-reversionary and, under no circumstances, will any funds provided under the Settlement revert to Cupertino. *Id*. In fact, the Residual Settlement Fund will be used to distribute pro rata cash payments to Settlement Class Members who submit valid claims and, if funds remain in the Residual Settlement Fund after distributions are made, the remaining funds will be distributed to a *cy pres* recipient chosen by the Parties. SA ¶ 7.3.

**B.      Certification of the Settlement Class is Appropriate.**

As discussed above, under the terms of the Settlement Agreement, the Parties have agreed, for the purposes of settlement only, to the certification of the Settlement Class, defined as follows:

> All residents of the United States who were sent notice that their personal information was accessed, stolen, or compromised as a result of the Data Security Incident. The Settlement Class specifically excludes: (i) Cupertino, any Entity in which Cupertino has a controlling interest, and Cupertino's partners, officers, directors, legal representative, successors, and assigns; (ii) any judge, justice, or judicial officer presiding over the Action and members of their immediate families and judicial staff; and (iii) any individual who timely and validly opts out of the Settlement.

-20-

cupertino - motion for

SA ¶ 2.39. Certification of the above-defined class permits notice of the Settlement Agreement to the Settlement Class to inform Settlement Class Members of the existence and terms of the Settlement Agreement, of their right to be heard on its fairness, of their right to opt-out or object, and of the date, time, and place of the final fairness hearing. *See* Manual for Complex Litig., §§ 21.632, 21.633. Further, because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, a finding that a litigation class is inappropriate is not a barrier to certification of a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial."). Thus, for the reasons stated below, the requirements of Rules 23(a) and (b)(3) are satisfied, and the Settlement Class should be certified for settlement purposes only.

### 1.    The Settlement Class Satisfies Rule 23(a).

Under Rule 23(a), a class action may be maintained if: (i) the class is so numerous that joinder of all members is impracticable; (ii) there are questions of law or fact common to the class; (iii) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (iv) the representative parties will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a).

### i.    The Settlement Class is Sufficiently Numerous.

Under Rule 23(a)(1), a class must be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Despite there being "[n]o exact formula" that determines numerosity, this Court has found that the numerosity requirement is satisfied if the class includes forty or more members. *See Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 562 n.2 (N.D.

-21-

cupertino - motion for

1    Cal. 2020). Here, the proposed Settlement Class consists of approximately 24,684 Settlement

2    Class Members. Therefore, the numerosity requirement is satisfied.

### ii.    Common Questions of Law and Fact Exist.

4    Next, Rule 23(a)(2) requires that there be "questions of law or fact common to the class."

5    Fed. R. Civ. P. 23(a)(2). Commonality is satisfied where the "determination of its truth or falsity

6    will resolve an issue that is central to the validity of each one of the claims in one stroke." *Meyer*

7    *v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012). As such, a single

8    common question is sufficient to satisfy the commonality requirement. *See Ellis v. Costco*

9    *Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011). Here, as is true in other data breach cases,

10   "[t]hese common issues all center on [Defendant's] conduct, satisfying the commonality

11   requirement." *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-

12   TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016). Therefore, common questions exist

13   here, including (but not limited to) whether Defendant engaged in the wrongful conduct alleged;

14   whether Defendant owed a duty to Plaintiffs and Settlement Class Members to protect their PII;

15   whether Defendant breached that duty; whether Defendant complied with industry standards and

16   applicable regulations; and whether and when Defendant knew or should have known of the Data

17   Security Incident. Therefore, commonality is satisfied.

### iii.    Plaintiffs' Claims are Typical to Those of the Class.

21   Rule 23(a)(3) requires that the class representative's claims must be typical of the class.

22   Fed. R. Civ. P. 23(a)(3). "[R]epresentative claims are 'typical' if they are reasonably co-extensive

23   with those of absent class members; they need not be substantially identical." *Meyer v. Portfolio*

24   *Recovery Assocs.*, 707 F.3d 1036, 1042 (9th Cir. 2012) (citations omitted). Here, Plaintiffs' claims

25   are "reasonably co-extensive with those of absent class members" considering Plaintiffs' claims

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND TO DIRECT
NOTICE TO THE SETTLEMENT CLASS

are based on Defendant's failure to protect Plaintiffs' and Class Members' PII. Further, Plaintiffs' claims are typical of the claims of the Settlement Class Members because Plaintiffs allege that each Settlement Class Members' PII, including Plaintiffs', was stolen in the same Data Security Incident. Therefore, the typicality requirement is satisfied.

### iv.    Plaintiffs and Class Counsel Adequately Represented the Class.

Finally, the adequacy requirement of Rule 23(a)(4) requires the class representatives to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement is met where: (i) there are no antagonistic or conflicting interests between named plaintiffs and their counsel and the absent class members; and (ii) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. *See Ellis*, 657 F.3d at 985. Here, Plaintiffs have no conflicts of interest with Settlement Class Members and "possess the same interest and suffer[ed] the same injury as the class members." *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 532 (N.D. Cal. 2009). Plaintiffs are members of the Settlement Class who all received notification of the Data Security Incident in or around July of 2023, suffered similar injuries to the Settlement Class, and also seek compensation for Defendant's alleged data security shortcomings. Further, each Plaintiff has demonstrated their unwavering commitment represent the Settlement Class by: (i) actively participating in the vigorous prosecution of the Action; (ii) reviewing documents and pleadings in the case; (iii) providing Class Counsel updates and important information needed throughout the Action; and (iv) regularly communicating with Class Counsel regarding litigation strategy, the status of litigation, and major developments. Federman Decl. ¶ 12.  Finally, proposed Class Counsel are highly competent and experienced data breach class action litigators (*Id*. ¶¶ 4-6.), and have zealously litigated this Action, including by: (i) drafting multiple, detailed Consolidated Class Action Complaints; (ii) responding to

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND TO DIRECT NOTICE TO THE SETTLEMENT CLASS

multiple motions to dismiss filed by Defendant; (iii) engaging and retaining an expert to increase their understanding of the scope of the Data Security Incident; and (iv) participating in months of arm's length settlement negotiations. *Id*. ¶ 12. Therefore, the adequacy requirement is satisfied.

### 2.      The Settlement Class Satisfies Rule 23(b)(3).

In addition to the requirements under Rule 23(a), Plaintiffs must also demonstrate that the Settlement Class is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3). Here, the Settlement Class is maintainable under Rule 23(b)(3) because common questions predominate over any questions affecting only individual members of the class and class-wide resolution is superior to other available methods for a fair and efficient resolution of the controversy. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017).

### i.      Common Questions Predominate.

"The predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case, and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) (internal citations omitted). Here, the predominance requirement is readily met because "the class is a cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's] conduct." *In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-md-02184-CRB, 2020 WL 1288377, at *5 (N.D. Cal. Mar. 18, 2020) (citation omitted). Plaintiffs' claims depend on whether Defendant used reasonable data security measures to protect former employees' PII, which is a question that can be resolved using the same evidence for all Settlement Class Members. This is precisely the type of predominant question that makes class-wide settlement worthwhile. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When 'one or more of the central issues in the action are common to the class and can

-24-

cupertino - motion for

be said to predominate, the action may be considered proper under Rule 23(b)(3)[.]").

### ii.    Superiority is Satisfied.

"[T]he purpose of the superiority requirement is to assure that the class action is the most effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). In determining whether the superiority requirement has been satisfied, courts consider: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

Here, the factors identified above all support satisfaction of the superiority requirement. Adjudicating individual actions here is impractical because: (i) the amount in dispute for individual class members is to small; (ii) the issues are too technical and complex; and (iii) the required discovery, including expert testimony and document review, is too costly. *See Just Film*, 847 F.3d at 1123. There are over 24,000 Settlement Class Members here and most of them likely lack the resources needed to pursue individual actions. *Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). Further, considering Plaintiffs' and Class Members' claims are being certified for purposes of settlement, there are no issues with manageability. *See Amchem*, 521 U.S. at 620. Thus, the superiority requirement is satisfied.

### V.    CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court grant Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

cupertino - motion for

1    DATED: February 28, 2025                    By:   /s/ William B. Federman

2                                                William B. Federman
                                                 Tanner R. Hilton
3                                                **FEDERMAN & SHERWOOD**
                                                 10205 N. Pennsylvania Ave.
4                                                Oklahoma City, OK 73120
                                                 -and-
5                                                212 W. Spring Valley Rd.
                                                 Richardson, TX 75081
6                                                Telephone: (405) 235-1560
                                                 Facsimile: (405) 239-2112
7                                                Email: wbf@federmanlaw.com

8
                                                 Robert S. Green
9                                                **GREEN & NOBLIN, P.C**
                                                 1 Blackfield Drive, No. 360
10                                               Tiburon, CA 94920
                                                 Telephone: (415) 477-6700
11                                               Facsimile: (415) 477-6710
                                                 Email: gnecf@classcounsel.com
12

13

14

15                                              Daniel Srourian, Esq.
                                                **SROURIAN LAW FIRM, P.C**.
16                                              3435 Wilshire Blvd., Suite 1710
                                                Los Angeles, California 90010
17                                              Telephone: (213) 474-3800
                                                Facsimile: (213) 471-4160
18                                              Email: daniel@slfla.com

19

20                                              *Attorneys for Plaintiffs and the Proposed Class*

21

22

23

24

25

26

27
                                     -26-
28   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
        FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND TO DIRECT
                              NOTICE TO THE SETTLEMENT CLASS

1

2

## **CERTIFICATE OF SERVICE**

3       I hereby certify that on the 28th day of February 2025, I electronically filed the foregoing

4   with the Clerk of the Court using the CM/ECF system which will send notification of such filing

5   to:

6

7   Christopher J. Seusing                    Jacob P. Wilson
    **Wood Smith Henning & Berman LLP**       **Wood Smith Henning & Berman LLP**
8   685 3rd Ave., 18th Floor                  10960 Wilshire Blvd., 18th Floor
    New York, NY 10017                        Los Angeles, CA 90024
9   (475) 755-7050                            (310) 480-7735
    cseusing@wshblaw.com                      jwilson@wshblaw.com
10

11  Sean V. Patel
    **Wood Smith Henning & Berman LLP**
12  33 Riverside Ave., Suite 502
    Westport, CT 06880
13  spatel@wshblaw.com

14

15

16

17

18                                            */s/ William B. Federman*
                                              William B. Federman
19

20

21

22

23

24

25

26

27

28  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
    FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND TO DIRECT
    NOTICE TO THE SETTLEMENT CLASS

cupertino - motion for