William B. Federman (*Admitted Pro Hac Vice*)
Tanner R. Hilton (*Admitted Pro Hac Vice*)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
Email:  wbf@federmanlaw.com

*Settlement Class Counsel*

[Additional Counsel Appear on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**
**Lead Case No. 5:23-cv-04007-BLF**

| | |
|---|---|
| In re:<br><br>**CUPERTINO ELECTRIC INC. LITIGATION** | Lead Case No. 5:23-cv-04007-BLF<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**<br><br>Date: December 4, 2025<br>Time: 9:00 a.m.<br>Courtroom: 3<br>Honorable Beth L. Freeman |

## NOTICE OF MOTION FOR AWARD OF
## ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

PLEASE TAKE NOTICE that on December 4, 2025, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Beth L. Freeman in Courtroom 3 of the above-entitled court, located at 280 South 1st Street, San Jose, California 95113,  Plaintiffs Kevin Crowl and Jay Wise (collectively, "Plaintiffs"), will and hereby do, move the Court for an order: awarding Class Counsel $247,630.00 in attorneys' fees, $13,798.34 in expenses, and Service Awards of $3,000.00 to each of the Class Representatives ($6,000.00 total).

This Motion is supported by the following memorandum of points and authorities, the accompanying Declaration of William B. Federman ("Federman Decl." attached hereto as **Exhibit 1**), the Settlement Agreement[1] ("Settlement Agreement" or "SA") (attached as **Exhibit A** to the Declaration of William B. Federman in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 94-1)), and the exhibits thereto, the argument of counsel at the hearing of this Motion, all other facts the Court may or should take notice of, and all files, records, and proceedings in this case.

Dated: September 8, 2025        */s/ William B. Federman*
                                William B. Federman
                                *Admitted Pro Hac Vice*
                                Tanner R. Hilton
                                *Admitted Pro Hac Vice*
                                **FEDERMAN & SHERWOOD**
                                10205 N. Pennsylvania Ave.
                                Oklahoma City, OK 73120
                                (405) 235-1560
                                E: wbf@federmanlaw.com
                                E: trh@federmanlaw.com

                                *Settlement Class Counsel*

---

[1] All capitalized terms herein shall have the meaning ascribed to them in the Settlement Agreement unless explicitly stated herein.

William B. Federman (*Admitted Pro Hac Vice*)
Tanner R. Hilton (*Admitted Pro Hac Vice*)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
Email:  wbf@federmanlaw.com

*Settlement Class Counsel*

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION
### Lead Case No. 5:23-cv-04007-BLF

| | |
|---|---|
| In re:<br><br>**CUPERTINO ELECTRIC INC. LITIGATION** | Lead Case No. 5:23-cv-04007-BLF<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**<br><br>Date: December 4, 2025<br>Time: 9:00 a.m.<br>Courtroom: 3<br>Honorable Beth L. Freeman |

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...........................................................................................1

II.     FACTUAL BACKGROUND and PROCEDURAL HISTORY ............................................2

III.    TERMS OF THE PROPOSED SETTLEMENT .................................................................3

IV.     ARGUMENT...................................................................................................3

   A.    Applicable Legal Standard. ...................................................................3

   B.    The Requested Fee Award is Reasonable Under the Favored Percentage Approach. .......5

      1.    Factors 1, 2, and 4: The Size of the Fund, the Benefits Obtained, and the Quality of the Results....................................................................................6

      2.    Factor 3: The Risk Taken by Counsel. ..........................................................9

      3.    Factor 5: Efforts Expended by Class Counsel..............................................10

      4.    Awards in Similar Cases. ...........................................................................11

   C.    The Lodestar Method Confirms the Reasonableness of the Requested Fee Award.........13

      1.    The Number of Hours Expended is Reasonable............................................13

      2.    The Hourly Rates are Reasonable. ..............................................................15

      3.    The Lodestar Results in a Negative Multiplier. ...........................................15

   D.    The Requested Fee Award is Not the Product of Collusion.............................................16

   E.    Class Counsel are Entitled to Reimbursement of Litigation Costs. ................................17

   F.    The Court Should Approve the Service Awards. ............................................................18

V.      CONCLUSION.............................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahmed v. HSBC Bank USA,*
   2019 WL 13027266 (C.D. Cal. Dec. 30, 2019) ........................ 4

*Alyeska Pipeline Serv. Co. v. Wilderness Soc.,*
   421 U.S. 240 (1975) ................................................. 3

*Beaver v. Tarsadia Hotels,*
   2017 WL 4310707 (S.D. Cal. Sept. 28, 2017) ........................ 12

*Bellinghausen v. Tractor Supply Co.,*
   306 F.R.D. 245 (N.D. Cal. 2015) ................................... 5

*Blum v. Stenson,*
   465 U.S. 886 (1984) ........................................... 5, 15

*Boeing Co. v. Van Gemert,*
   444 U.S. 472 (1980) .............................................. 5

*Carter v. Vivendi Ticketing US LLC,*
   2023 WL 8153712 (C.D. Cal. Oct. 30, 2023) ....................... 18

*Ctr. For Biological Diversity v. Env't Prot. Agency,* No. C,
   2017 WL 6761932 (N.D. Cal. Dec. 4, 2017) ........................ 13

*DiMercurio v. Equilon Enterprises LLC,*
   2024 WL 2113857 (N.D. Cal. May 9, 2024) ......................... 17

*Gannon v. Truly Nolen of Am. Inc.,*
   2023 WL 6536477 (D. Ariz. Aug. 31, 2023) ......................... 9

*Gaston v. FabFitFun, Inc.,*
   2021 WL 6496734 (C.D. Cal. Dec. 9, 2021) ........................ 10

*Giroux v. Essex Property Trust, Inc.,*
   2019 WL 1207301 (N.D. Cal. Mar. 14, 2019) ....................... 18

*Hanlon v. Chrysler,*
   150 F.3d 1011 (9th Cir. 1998) .................................... 4

*Harris v. Marhoefer,*
   24 F.3d 16 (9th Cir. 1994) ...................................... 17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983) .................................................................................. 5

*Hopkins v. Stryker Sales Corp.,*
   2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ............................................. 16

*I.C. v. Zynga, Inc.,*
   600 F.Supp.3d 1034 ................................................................................... 9

*In re Anthem, Inc. Data Breach Litig.,*
   2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) .......................................... 8

*In re Blackbaud, Inc., Customer Data Breach Litig.,*
   2024 WL 2155221 (D.S.C. May 14, 2024) .............................................. 10

*In re Blackbaud, Inc., Customer Data Breach Litig.,*
   2024 WL 5247287 (D.S.C. Dec. 30, 2024) .............................................. 10

*In re Bluetooth Headset Prods. Liab. Litig.,*
   654 F.3d 935 (9th Cir. 2011) ........................................................... Passim

*In re Equifax Inc. Customer Data Sec. Breach Litig.,*
   999 F.3d 1247 (11th Cir. June 3, 2021) ..................................................... 8

*In re Equifax Inc. Customer Data Sec. Breach Litig.,*
   2020 WL 256132 (N.D. Ga. Mar. 17, 2020) .............................................. 8

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.,*
   293 F.R.D. 21 (D. Me. 2013) ..................................................................... 9

*In re Mercury Interactive Corp.,*
   618 F.3d 988 (9th Cir. 2010) ...................................................................... 4

*In re Omnivision Techs., Inc.,*
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................. 5, 6

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*
   2020 WL 4212811 (N.D. Cal. July 22, 2020) .......................................... 18

*In re: Wash. Pub. Power Supply Sys. Sec. Litig.,*
   19 F.3d 1291 (9th Cir. 1994) ...................................................................... 4

*Jarrell v. Amergas Propane, Inc.,*
   2018 WL 1640055 (N.D. Cal. Apr. 5, 2018) ........................................... 13

*Johnson v. Yuma Reg'l Med. Ctr.,*
   2024 WL 4803881 (D. Ariz. Nov. 15, 2024) ............................................ 9

-iv-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

*Knight v. Red Door Salons, Inc.*,
   2009 WL 248367 (N.D. Cal. Feb. 2, 2009)...................................................................... 12

*Laffitte v. Robert Half Internat. Inc.*,
   376 P.3d 672 (Cal. 2016) ............................................................................................... 5

*Maree v. Deutsche Lufthansa AG*,
   2022 WL 5052582 (C.D. Cal. Sep. 30, 2022) ............................................................... 16

*McKinney-Drobnis v. Oreshack*,
   16 F.4th 594 (9th Cir. 2021)........................................................................................... 16

*Miller v. Ghirardelli Chocolate Co.*,
   2015 WL 758094 (N.D. Cal. Feb. 20, 2015).................................................................... 6

*Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*,
   2021 WL 4133860 (N.D. Cal. Sept. 10, 2021) .............................................................. 16

*Oliveira v. Language Line Services, Inc.*,
   767 F.Supp.3d 984 (N.D. Cal. 2025) ....................................................................... 12, 13

*Ontiveros v. Zamora*,
   303 F.R.D. 356 (E.D. Cal. 2014) ................................................................................... 17

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009)......................................................................................... 18

*Rosado v. Ebay Inc.*,
   2016 WL 3401987 (N.D. Cal. June 21, 2016) .............................................................. 15

*Rutti v. Lojack Corp., Inc.*,
   2012 WL 3151077 (C.D. Cal. July 31, 2012) ............................................................... 17

*Salinas v. Block, Inc.*,
   2025 WL 1070754 (N.D. Cal. Mar. 27, 2025)..................................................... 6, 12, 15

*Schneider v. Chipotle Mexican Grill, Inc.*,
   336 F.R.D. 588 (N.D. Cal. Nov. 4, 2020) ..................................................................... 16

*Schwarz v. Sec'y of Health and Human Serv.*,
   73 F.3d 895 (9th Cir.1995)............................................................................................. 15

*Smith v. CRST Van Expedited, Inc.*,
   2013 WL 163293 (S.D. Cal. Jan. 14, 2013) .................................................................. 12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

*Smith v. Pacific Personnel Servs., Inc.*,
    2018 WL 11437641 (N.D. Cal. Oct. 11, 2018) ........................................................ 4

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .............................................................................. 7, 8

*Tanner v. Plavan Commercial Fueling, Inc.*,
    2025 WL 2231304 (S.D. Cal. Aug. 4, 2025) ........................................................ 18

*Vinh Nguyen v. Radient Pharm. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ........................................................ 4

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ................................................................... Passim

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................................ 4

*Zwicky v. Diamond Resorts Inc.*,
    2024 WL 1717553 (D. Ariz. Apr. 22, 2024) ........................................................ 16

*Zwicky v. Diamond Resorts Mgmt. Inc.*,
    343 F.R.D. 101 (D. Az. 2022) .............................................................................. 16

**Other Authorities**

Federal Judicial Center, Manual for Complex Litigation, § 27.71, 336 (4th ed. 2004) ............ 5, 6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

## I.    INTRODUCTION

Plaintiffs Kevin Crowl and Jay Wise (collectively, "Plaintiffs"), individually and on behalf of the putative class, respectfully move for an order: (i) approving an award of attorneys' fees in the amount of $247,630.00; (ii) reimbursing litigation costs and expenses in the amount of $13,798.34; and (iii) awarding Service Awards of $3,000.00 to each Class Representative, a total of $6,000.00.

The Settlement represents an outstanding result for the Settlement Class Members, particularly considering the complex nature of the case and the uncertainty of success. (Declaration of William B. Federman in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Expenses, and Service Awards ("Federman Decl."), ¶ 10 (attached hereto as **Exhibit 1**)). Class Counsel diligently and vigorously prosecuted this case to secure a fair, adequate, and reasonable settlement for Plaintiffs and the Settlement Class without any guarantee of payment for their services. Although Plaintiffs believe in the merits of their claims, this litigation was inherently risky and complex. Through Class Counsel's determination and hard work, Class Counsel negotiated a class action settlement providing a $740,520.00 ***non-reversionary*** common fund that will provide compensation for: (i) Out-of-Pocket Losses up to $5,000.00 (SA, ¶ 7.1.2.); (ii) two (2) years of three (3) bureau credit monitoring and identity theft protection services (*id*. ¶ 7.1.1.); and (iii) a *pro rata* cash payment from the Residual Settlement Fund (*id*. ¶ 7.1.3.). Additionally, the Settlement provides for Defendant's commitment to implement improved data security measures, which over the next three (3) years, are worth approximately $750,000.00. *Id*. ¶ 8.1; *see also* Federman Decl. ¶ 10. Thus, the Settlement has an estimated value of at least ***$1,490,520.00*** for 24,684 Settlement Class Members. *Id*.

Class Counsel now respectfully move this Court for an award of attorneys' fees in the amount of $247,630.00 (16.61% of the total value of the Settlement) and reimbursement of expenses in the amount of $13,798.34. Federman Decl. ¶ 11. This fee request is ***less*** than the amount contemplated by the Settlement Agreement and Plaintiffs' Motion for Preliminary Approval, which contemplates an award of 25% of the total value of the Settlement. *Id*. In addition

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

to attorneys' fees and expenses, Class Counsel also seek Service Awards of $3,000.00 for each Class Representative in recognition of their efforts on behalf of the Settlement Class. For the reasons stated below, this request falls within the range of reasonableness for fee and expense requests in the Ninth Circuit, and Class Counsel's fee and expense request is fair and reasonable under both the percentage and lodestar approach.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Between June 14, 2023, and June 24, 2023, Cupertino suffered the Data Security Incident in which unauthorized hackers accessed and acquired information pertaining to current and former employees of Cupertino Electric Inc. ("Defendant" or "Cupertino"). *See* Plaintiffs' Amended Consolidated Class Action Complaint ("Compl."), ¶ 1, ECF No. 75. The personally identifiable information compromised in the Data Security Incident included names, addresses, Social Security numbers, driver's license numbers, and dates of birth. *Id*. ¶ 2. On August 8, 2023, Plaintiff Kevin Crowl filed the first class action complaint against Cupertino in the United States District Court for the Northern District of California, asserting claims arising out of the Data Security Incident. *See Crowl v. Cupertino Electric, Inc.*, No. 5:23-cv-04007-BLF (N.D. Cal.). Subsequently, on August 18, 2023, Plaintiff Jay Wise also filed a class action complaint against Cupertino in the United States District Court for the Northern District of California, asserting claims arising out of the Data Security Incident. *See Wise v. Cupertino Electric, Inc.*, No. 5:23-cv-04232-BLF (N.D. Cal.). On December 6, 2023, the Court consolidated the two (2) actions for all purposes into *In re: Cupertino Electric Inc. Litigation*, No. 5:23-cv-04007-BLF (N.D. Cal.) before the Honorable Beth L. Freeman, U.S.D.J.

On February 1, 2024, Plaintiffs Kevin Crowl and Jay Wise filed their Consolidated Class Action Complaint (ECF No. 28), and on August 14, 2024, the Court granted in part and denied in part Defendant's Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint and granted Plaintiffs' leave to amend (ECF No. 69). In response, Plaintiffs filed their Amended Consolidated Class Action Complaint on September 13, 2024 (ECF No. 75). Beginning in September 2024 and continuing through November 2024, the Parties engaged in meaningful arm's-length settlement

negotiations, while continuing to brief Defendant's Motion to Dismiss Plaintiffs' Amended Consolidated Class Action Complaint. Federman Decl. ¶ 6. Finally, on November 22, 2024, the Parties reached a settlement in principle to resolve and release on a class-wide basis all claims against Cupertino. *Id*. On November 27, 2024, the Parties notified the Court of the settlement in principle (ECF No. 87).

On February 28, 2025, Class Counsel moved the Court for preliminary approval of the Settlement (ECF No. 109), and, on June 5, 2025, the Parties participated in a hearing on Plaintiffs' Unopposed Motion for Preliminary Approval. *Id*. ¶ 9. The Court granted preliminary approval of the settlement on June 10, 2025, and directed Notice be sent to the Settlement Class Members (ECF No. 105). Following the preliminary approval order, Class Counsel collaborated with the Settlement Administrator to implement the Notice and claims process. *Id*. ¶ 9. This included auditing and reviewing the Settlement Website, reviewing weekly claims reports from the Settlement Administrator, and responding to inquiries from Settlement Class Members. *Id*. Class Counsel will continue to expend significant efforts to ensure the Settlement benefits reach Settlement Class Members and seek and achieve final approval of the Settlement. *Id*. ¶ 14.

## III.    TERMS OF THE PROPOSED SETTLEMENT

In the interest of judicial efficiency for a summary of the terms of the Settlement Plaintiffs respectfully refer this Court to and hereby incorporate by reference Plaintiffs' Unopposed Motion for Preliminary Approval (ECF No. 94), and the accompanying exhibits, including the Settlement Agreement (ECF No. 94-1), filed in conjunction therewith.

## IV.    ARGUMENT

### A.    Applicable Legal Standard.

In the Ninth Circuit, district courts may award attorneys' fees and costs to prevailing plaintiffs where "the successful litigants have created a common fund for recovery or extended substantial benefit to the class." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 275 (1975)). Where counsel for a class seeks fees from a common fund, courts within the Ninth Circuit have

discretion to employ either the percentage of the recovery or lodestar method to determine whether the fee request is reasonable. *Smith v. Pacific Personnel Servs., Inc.*, No. 17-cv-03594-SK, 2018 WL 11437641, at *8 (N.D. Cal. Oct. 11, 2018) (citing *In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010)). Regardless of the chosen method, courts must award attorneys' fees based on an evaluation of "all of the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

Under the percentage of the recovery method, the "court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." *Hanlon v. Chrysler Group*, 150 F.3d 1011, 1029 (9th Cir. 1998), *overruled on other grounds* by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Most courts have found the percentage of the recovery approach superior in cases with a common-fund recovery because it: (i) parallels the use of percentage-based contingency fee contracts; (ii) aligns the lawyers' interests with that of the class in achieving the maximum possible recovery; and (iii) reduces the burden on the court by eliminating the detailed and time-consuming lodestar analysis. *See Vinh Nguyen v. Radient Pharm. Corp.*, No. 11-cv-00406, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) ("There are significant benefits to the percentage approach, including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires.").

In contrast, the lodestar method "is typically used when the relief obtained is not easily monetized." *Ahmed v. HSBC Bank United States*, No. 15-2057-FMO, 2019 WL 13027266, at *5-6 (C.D. Cal. Dec. 30, 2019) (internal citation omitted). The lodestar method also "inadequately responds to the problem of risk." *In re: Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) (without the percentage of the recovery method of calculating fees, "very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing") (internal citation omitted). Further, it can discourage early resolution and incentivize the unnecessary extension of

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

the litigation for financial gain to the detriment of the class. *Laffitte v. Robert Half Internat. Inc.*, 376 P.3d 672, 680 (Cal. 2016) (quoting the American Law Institute's findings that the lodestar method creates a "financial incentive to extend the litigation"). However, even though the percentage of the recovery method is favored in common fund cases where the benefit to the class is easily quantifiable (as here), district courts may incorporate the lodestar method to conduct a cross check to ensure the reasonableness of the requested fee award. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 260 (N.D. Cal. 2015) (determining reasonableness of fee request with the benefit of the recovery approach but using the lodestar method to cross check the reasonableness of the fee request).

Nonetheless, whether applying the lodestar or percentage method, "the most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *see also In re Bluetooth*, 654 F.3d at 942 ("Foremost among these considerations . . . is the benefit obtained for the class."); Federal Judicial Center, Manual for Complex Litigation, § 27.71, 336 (4th ed. 2004) ("[The] fundamental focus is on the result actually achieved for class members."). Under either approach, the award requested here is fair and reasonable.

## B.    The Requested Fee Award is Reasonable Under the Favored Percentage Approach.

It is well established that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (finding class counsel was entitled to a reasonable fee based "on a percentage of the fund bestowed on the class"). Indeed, the Ninth Circuit has consistently approved awards of attorneys' fees using the percentage method. *See Vizcaino*, 290 F.3d at 1047–48; *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (recognizing the "use of the percentage method in common fund cases appears to be [the] dominant" method for determining attorneys' fees). Although the Ninth Circuit has set 25% of a common fund as a "benchmark" award under the percentage-of-the-fund method, courts award

1    more than the benchmark when justified, considering factors much like those considered when

2    determining whether a multiplier is appropriate under the lodestar approach. *Vizcaino*, 290 F.3d

3    at 1048, 1051; *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1047 ("[I]n most common

4    fund cases, the award exceeds that benchmark."). Here, the total value of the Settlement is at least

5    ***$1,490,520.00***, and the requested fee award of $247,630.00 is not only ***less*** than the Ninth

6    Circuit's 25% benchmark but is also ***less*** than the maximum amount allowed under the Settlement

7    Agreement. SA, ¶ 19.2. Indeed, the requested fee award is only 16.61% of the total value of the

8    Settlement.

9         Nonetheless, when assessing the reasonableness of an attorneys' fee award under the

10   percentage method, courts consider "(1) the size of the fund (and thus the resulting size of the

11   percentage fee award); (2) quality of the results obtained by counsel; (3) risk taken on by counsel;

12   (4) incidental or non-monetary benefits conferred by settlement; (5) effort expended by counsel;

13   and (6) counsel's reasonable expectations based on the circumstances of the case and fee awards

14   in other cases." *Vizcaino*, 290 F.3d at 1047–50. For the reasons stated below, each of these factors

15   supports Class Counsel's requested fee award.

16        **1.     Factors 1, 2, and 4: The Size of the Fund, the Benefits Obtained, and**

17   **the Quality of the Results.**

18        "The overall result and benefit to the class from the litigation is the most critical factor in

19   granting a fee award." *Omnivision*, 559 F. Supp. 2d at 1046; *see also* Federal Judicial Center,

20   Manual for Complex Litigation, § 27.71, p. 336 (4th ed. 2004) (the "fundamental focus is the

21   result actually achieved for class members"). Further, "when determining the value of a

22   settlement, courts consider the monetary ***and*** non-monetary benefits that the settlement confers."

23   *Miller v. Ghirardelli Chocolate Co.*, No. 12-cv-04936, 2015 WL 758094, at *5 (N.D. Cal. Feb.

24   20, 2015) (emphasis added). In fact, in data breach cases, this Court and other California courts

25   consider the value of remedial measures in calculating the total value of the settlement. *See*

26   *Salinas v. Block, Inc.*, No. 22-cv-04823-SK, 2025 WL 1070754, at *2 (N.D. Cal. Mar. 27, 2025)

27   (approving attorneys' fees of 25% of the total settlement value, which was calculated by adding

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

the common fund ($15 million) and value of remedial measures (worth approximately $5 million)); *In re Solara Medical Supplies Data Breach Litig.*, No. 3:19-cv-02284, ECF No. 150 (S.D. Cal., Sept. 12, 2022) (granting the plaintiffs' motion for attorney's fees in a data breach class action where the requested attorney's fees were based in part on the value the remedial measures added to the settlement); *see also Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003) ("[C]ourts should consider the value of the injunctive relief obtained as a 'relevant circumstance' in determining what percentage of the common fund class counsel should receive as attorneys' fees.").

Through Class Counsel's efforts and negotiations, Class Counsel achieved an excellent common fund of $740,520.00 for approximately 24,684 Settlement Class Members, which equates to a $30.00 per-person recovery ***exclusive*** of the value of the remedial improvements to Defendant's cybersecurity. This per-person recovery exceeds that of many other data privacy settlements with similar class sizes and information disclosed. *See In re Ethos Tech Inc. Data Breach Litig.*, No. 3:22-cv-09203-SK (N.D. Cal.) (per-person recovery of $27.00 for a class size of 36,000); *In re: Snap Finance Data Breach Litigation*, Case No. 2:22-cv-00761-TS-JCB (D. Utah) (ECF No. 57) (per-person recovery of $29.50 for a class size of 60,902); *Gupta v. Aeries Software, Inc.*, No. SA CV 20-0995 FMO (C.D. Cal. March 3, 2023) (ECF No. 110) (granting final approval of $1,750,000.00 non-reversionary common fund on behalf of a 98,910 person class, which is a per-person recovery of approximately $17.70 per class member).

Further, the Settlement provides three (3) components of meaningful relief: (i) cash payments to Settlement Class Members; (ii) credit monitoring and identity theft protection services; and (iii) data security enhancements/improvements implemented by Defendant. SA, ¶¶ 7.1.1-7.1.3, 8.1. Under the cash component of the Settlement, Class Counsel secured a $740,520.00 non-reversionary common fund which will pay for the following categories of benefits: (i) Out-of-Pocket Losses up to $5,000.00; (ii) an uncapped Alternative Cash Payment from the Residual Settlement Fund, the amount of which will be determined by the number of claims submitted; and (iii) two (2) years of credit monitoring and identity protection services,

-7-

1   which shall include: (i) three bureau credit monitoring, (ii) report and score, (iii) dark web

2   monitoring, (iv) identity theft protection services, (v) identity resolution services, and (vi)

3   $1,000,000.00 in identity theft insurance. *Id.*

4        Additionally, the Settlement provides for Defendant's implementation of data security

5   enhancements, which specifically include the implementation of a records management process

6   that tracks the storage and disposition of records through their designated legal retention period.

7   *Id.* ¶ 8.1. Defendant intends to invest $250,000.00 over the next three (3) years in data security

8   enhancements, which are worth approximately $750,000.00. Federman Decl. ¶ 10. Considering

9   the value of the remedial measures can be accurately ascertained, the amount of such measures

10  may be included "'as part of the value of a common fund for purposes of applying the percentage

11  method of determining fees.'" *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK,

12  2018 WL 3960068, at *8 (N.D. Cal. Aug. 17, 2018) (quoting *Staton v. Boeing Co.*, 327 F.3d at

13  974). At a minimum, the Court should "consider the value of this nonmonetary relief as a "relevant

14  circumstance" in determining what percentage of the common fund class counsel should receive

15  as attorneys' fees, rather than as part of the fund itself.'" *Anthem*, 2018 WL 3960068, at *8.

16  Further, the data security enhancements will benefit every Settlement Class Member regardless

17  of whether they submit a claim for monetary relief because Plaintiffs' and Class Members' Private

18  Information remain in Defendant's possession. *Id.* ¶ 10. Most importantly, the data security

19  enhancements made available through the Settlement mirrors the relief Settlement Class Members

20  could expect to receive only after a successful trial, adding further value to the Settlement. *See In*

21  *re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 17-md-2800-TWT, 2020 WL 256132, at

22  *3 (N.D. Ga. Mar. 17, 2020) (finding commitment to invest in "data security and related

23  technology substantially benefits the class because it ensures adequate funding for securing

24  plaintiffs' information long after the case is resolved."), *rev'd in part on other grounds, In re*

25  *Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247 (11th Cir. June 3, 2021).

26       In sum, the substantial non-reversionary common fund, combined with the value of the

27  data security enhancements Defendant intends to implement over the next three (3) years, yields

28                                          -8-

a total settlement value of ***$1,490,520.00***. Therefore, the exceptional Settlement achieved here should lead the Court to conclude that factors 1, 2, and 4 support the requested fee award.

### 2.    Factor 3: The Risk Taken by Counsel.

Class Counsel assumed significant risk of nonpayment or underpayment of attorneys' fees by undertaking this case. Federman Decl. ¶ 18. Class Counsel took this case on a purely contingent basis with the understanding that they would only be compensated if there was a recovery for Plaintiffs, and Court approval of the requested fees. *Id*. This litigation commenced over two (2) years ago and has required the devotion of substantial time, totaling 435.4 hours from Class Counsel and Plaintiffs' Counsel to date. *Id*. ¶ 14. This case, as with most class action lawsuits, required a significant commitment of time and resources from Class Counsel. *Id*. This time could have been devoted to other fee generating matters of lesser risk and complexity. *Id*. ¶ 18. As such, neither compensation for their time nor reimbursement of their costs were guaranteed to Class Counsel. *Id*.

Further, the risk of non-payment in this case was a harsh reality for Class Counsel where the Court dismissed Plaintiffs' class allegations following Defendant's first Motion to Dismiss and Strike Class Allegations. *See* ECF No. 69.[2] Indeed, many data breach class actions in the Ninth Circuit are dismissed in their entirety at the motion to dismiss stage providing no relief for the class or payment for class counsel. *Johnson v. Yuma Reg'l Med. Ctr.*, No. CV-22-01061-PHX-SMB, 2024 WL 4803881 (D. Ariz. Nov. 15, 2024) (dismissing data breach case in its entirety); *I.C. v. Zynga, Inc.*, 600 F.Supp.3d 1034 (dismissing data breach case for failure to allege injury in fact); *Gannon v. Truly Nolen of Am. Inc.*, No. CV 22-428- TUC-JAS, 2023 WL 6536477 (D. Ariz. Aug. 31, 2023) (dismissing data breach case in its entirety). Further, even if Plaintiffs survived the pleading stage, there is a risk that Plaintiffs would be unable to certify a class and maintain class certification through trial. In fact, numerous data breach class actions have faced significant hurdles at the class certification stage. *See, e.g.*, *In re Hannaford Bros. Co. Customer*

---

[2] The Court dismissed Plaintiffs' class allegations ***without prejudice*** (ECF No. 69) and Plaintiffs filed their Amended Consolidated Class Action Complaint (ECF No. 75) on September 13, 2024.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

*Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) (denying class certification in data breach class action); *Gaston v. FabFitFun, Inc.*, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) ("Historically, data breach cases have experienced minimal success in moving for class certification."); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying motion for class certification in data breach case); *see also In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JFA, 2024 WL 5247287 (D.S.C. Dec. 30, 2024) (denying motion for leave to file a renewed class certification motion). Therefore, by undertaking this case, Class Counsel ran a significant risk of non-payment. Thus, this factor weighs in favor of approval of the requested fee.

### 3.    Factor 5: Efforts Expended by Class Counsel.

Class Counsel devoted substantial time, labor, and resources to achieve the Settlement. Since inception of the case, Class Counsel documented 435.4 hours in this case to date. Federman Decl. ¶ 14. This time does not include the time spent preparing the motion for final approval, preparing for the final fairness hearing, supervising the claims administration process, nor responding to Settlement Class Member inquiries about their payments. *Id*. All these activities will require Class Counsel to accrue additional time and fees. *Id*. As a result, Class Counsel estimate they will spend in excess of forty (40) additional hours aiding Class Members and completing the Settlement approval process. *Id*. Although Class Counsel consistently sought to keep costs and fees to a minimum, this case required a significant amount of work and time. *Id*. ¶ 13. Defense counsel in this case are experienced data breach defense counsel from a national law firm. *Id*. Indeed, Class Counsel's efforts expended in this matter included:

a.    fully investigating the facts and legal claims, including interviewing and vetting multiple potential plaintiffs;

b.    obtaining and reviewing documents from Class Members substantiating their claims;

c.    preparing the initial complaints, a Consolidated Complaint (ECF No. 28), and an Amended Consolidated Complaint (ECF No. 75);

d.  briefing multiple oppositions to Defendant's motions to dismiss and strike class allegations (ECF Nos. 40; 85);

e.  drafting and propounding discovery requests on Defendant, including Interrogatories, Requests for Production of Documents, and Requests for Admission;

f.  regularly communicating with the named Plaintiffs and Plaintiffs' Counsel to keep them apprised of the progress in the action;

g.  engaging and working with a cybersecurity expert to assess and report on Defendant's data security;

h.  analyzing the strengths and weaknesses of the case;

i.  participating in months of settlement negotiations with Defendant to reach and finalize the Settlement Agreement, proposed orders, and notice documents;

j.  developing the Notice Plan and distribution plan for the Settlement;

k.  soliciting bids from several settlement administrators to ensure the class was getting the best notice at a cost-effective price;

l.  obtaining preliminary approval of the Settlement;

m.  aiding Settlement Class Members with questions about the claims process and submitting claims;

n.  conducting research for Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, and Service Awards and subsequently drafting Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, and Service Awards; and

o.  working with the Settlement Administrator to implement the notice program and oversee the claims process.

*Id*. For these reasons, the time and labor required strongly supports the finding that the requested fee award is reasonable.

### 4.  **Awards in Similar Cases**.

The attorneys' fees awarded in similar cases support the requested fee here. Where the

1 percentage method is employed, 25% of a common fund is a presumptively reasonable amount of

2 attorneys' fees. *See, e.g., Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the

3 fund as a 'benchmark' for a reasonable fee award, providing adequate explanation in the record

4 of any 'special circumstances' justifying a departure."). However, "in most common fund cases,

5 the award exceeds" the 25% benchmark. *Knight v. Red Door Salons, Inc.*, No. 08-cv- 1520 SC,

6 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009). Class Counsel respectfully requests a fee award

7 of $247,630.00, which represents 16.61% of the total value of the settlement. Federman Decl. ¶

8 11. To avoid diminishing the funds available to Settlement Class Members, while still accounting

9 for the value of Defendant's data security enhancements, Class Counsel departs from the

10 permitted 25% of the total settlement value and seeks credit for only one (1) year of the value of

11 those enhancements in addition to the common fund. Accordingly, Class Counsel's requested fee

12 award represents 25% of the combined value of the common fund and one year's worth of data

13 security enhancements, which equates to 33% (or 1/3) of the common fund alone. This compares

14 favorably to other cases, including data breach class actions, as most fee awards in common fund

15 settlements typically fall within the 25% to 35% range. *See, e.g.*, Brian Fitzpatrick, *An Empirical*

16 *Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L. Stud. 811, 833, 838

17 (2010); *see also Salinas*, 2025 WL 1070754, at *2 (awarding attorneys' fees of 33% of settlement

18 fund in data breach class action); *Solara*, No. 3:19-cv-02284-H-KSC (ECF No. 150) (awarding

19 attorneys fees of 23.5% of the total value of the settlement and 45% of the settlement fund); *Smith*

20 *v. CRST Van Expedited, Inc.*, No. 10-cv-1116-IEG WMC, 2013 WL 163293, at *5 (S.D. Cal. Jan.

21 14, 2013 ("Under the percentage method, California has recognized that most fee awards based

22 on either lodestar or percentage calculation are 33 percent."); *Oliveira v. Language Line Services,*

23 *Inc.*, 767 F.Supp.3d 984, 1006 (N.D. Cal. 2025) (finding award of 30% of the common fund to be

24 reasonable); *Beaver v. Tarsadia Hotels*, No. 11-cv-01842-GPC-KSC, 2017 WL 4310707, at *17

25 (S.D. Cal. Sept. 28, 2017) (finding fee request of 33% of the settlement fund to be fair and

26 reasonable). Therefore, this factor also supports the requested fee award.

27

28
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

**C.    The Lodestar Method Confirms the Reasonableness of the Requested Fee Award.**

Application of the lodestar method confirms the propriety of Class Counsel's fee request. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. Indeed, "even when the primary basis of the fee award is the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Oliveira*, 767 F.Supp.3d at 1001 (quoting *Vizcaino*, 290 F.3d at 1050). In performing the lodestar cross-check, however, "the determination of fees should not result in a second major litigation," and "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal is...to do rough justice, not to achieve auditing perfection." *Jarrell v. Amergas Propane, Inc.*, No. 16-CV-01481-JST, 2018 WL 1640055, at *4 (N.D. Cal. Apr. 5, 2018) (citations omitted). Further, "[i]n applying the 'lodestar method,' courts consider non-attorney fees, such as paralegal, secretarial, and technician services, as part of the attorney's fees calculation." *Ctr. For Biological Diversity v. Env't Prot. Agency*, No. C 17-00720 WHA, 2017 WL 6761932, at *4 (N.D. Cal. Dec. 4, 2017), *report and recommendation adopted*, No. C 17-00720 WHA, 2018 WL 264087 (N.D. Cal. Jan. 2, 2018).

**1.    The Number of Hours Expended is Reasonable**.

Class Counsel and Plaintiffs' Counsel devoted substantial (but appropriate) time, labor, and resources to achieve this Settlement. Since inception of the case, Class Counsel, with the help of Plaintiffs' counsel, have documented 435.4 hours spent to date litigating this case, at a value of $277,295.00, when multiplied by their customary rates, as depicted by the chart below.[3]

---

[3] Detailed time and expense charts for each firm are included in the Declaration of William B. Federman in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Expenses, and Service Awards.

-13-

| FIRM | HOURS | LODESTAR | EXPENSES |
|------|-------|----------|----------|
| Federman & Sherwood | 391.0 | $242,945.00 | $12,507.85 |
| Green & Noblin, P.C. | 25.4 | $21,590.00 | $425.31 |
| Srourian Law Firm, P.C. | 19.0 | $12,760.00 | $865.18 |
| **TOTALS** | **435.4** | **$277,295.00** | **$13,798.34** |

Class Counsel maintained detailed, contemporaneous time records billed in six-minute increments and ensured that all Plaintiffs' Counsel adhered to the same standard. Federman Decl. ¶ 16. In anticipation of the filing of the fee motion, Class Counsel collectively reviewed the time submissions, audited them, and reduced hours that appeared duplicative, excessive, or unnecessary. *Id*. ¶ 12.

As detailed above and in the attached Declaration, these hours include, but are not limited to: (i) engaging in extensive efforts to develop strategic plans; (ii) extensive background investigation; (iii) vetting potential class representatives; (iv) extensively researching and filing the complaints to address potential arguments raised by Defendant; (v) drafting and serving discovery requests; (vi) drafting multiple oppositions to Defendant's motions to dismiss; (vii) undertaking substantial investigation of the Data Incident, including engaging and retaining an expert to analyze Defendant's data security environment; (viii) negotiating the details of the Settlement Agreement over multiple months and securing preliminary approval of the Settlement; (ix) preparing the preliminary approval motion papers; (x) obtaining bids from multiple claims administration firms and working with the Settlement Administrator to prepare and implement the notice plan and claims process; (xi) conducting research for Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, and Service Awards and subsequently drafting Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, and Service Awards; and (xii) monitoring and aiding Settlement Class Members in this claims process. *Id*. ¶ 13. However, additional work will be required. The lodestar chart above does not include the time spent preparing the motion for final approval, preparing for the final fairness hearing, supervising the claims process, or responding

-14-

to Settlement Class Member inquiries about their payments after the Settlement receives final approval, all of which will require Class Counsel to accrue additional time and fees. *Id.* ¶ 14. Class Counsel estimate they will incur approximately forty (40) additional hours engaging in these additional tasks. *Id.*

## 2.    The Hourly Rates are Reasonable.

To assist the court in calculating the lodestar, plaintiffs must submit "satisfactory evidence...that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984). The relevant community is that in which the district court sits. *See Schwarz v. Sec'y of Health and Human Serv.*, 73 F.3d 895, 906 (9th Cir.1995).

Here, Class Counsel's hourly rates have been approved by this Court and other courts within this Circuit in other data privacy litigation similar to this action. *See In re: Orrick, Herrington & Sutcliffe, LLP Data Breach Litig.*, No. 3:23-cv-04089, ECF Nos. 68, 74 (N.D. Cal.) (approving Federman & Sherwood partner hourly rate of $1,150.00, attorney hourly rate of $600.00, and paralegal hourly rate of $300.00); *Salinas*, 2025 WL 1070754, at *2 (approving Federman & Sherwood partner hourly rate of $1,150.00, attorney hourly rate of $550.00, and paralegal hourly rate of $300.00); *Solara*, No. 3:19-cv-02284-H-KSC (ECF No. 150) (approving partner rate of up to $1,350.00); *Perez, et al. v. Carvin Wilson Software, LLC*, No. CV-23-00792, ECF Nos. 48-1, 53 (D. Ariz.) (approving Federman & Sherwood's hourly rate range of $300–$1,150.00); *Hogsed v. PracticeMax, Inc.*, No. 2:22-cv-01261, ECF Nos. 42-1, 45 (D. Ariz.) (approving hourly rate range from $125.00–$1,450.00). Thus, the hourly rates on which Class Counsel's lodestar is based are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. Federman Decl. ¶ 17.

## 3.    The Lodestar Results in a Negative Multiplier.

Class Counsel's fee request reflects a negative multiplier of 0.89. *Id.* ¶ 14. As this Court has found, a negative multiplier "strongly suggests the reasonableness of the negotiated fee." *Rosado v. Ebay Inc.*, No. 5:12-cv-04005-EJD, 2016 WL 3401987, at *8 (N.D. Cal. June 21, 2016);

-15-

*see also Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 601 (N.D. Cal. Nov. 4, 2020) (awarding fees in excess of the 25% benchmark "based almost entirely on the negative lodestar multiplier…."); *Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*, No. 19-cv-07097-DMR, 2021 WL 4133860, at *6 (N.D. Cal. Sept. 10, 2021) ("A negative multiple strongly suggests the reasonableness of a negotiated fee."). Indeed, this Court and others within the Ninth Circuit routinely award positive multipliers in class action common fund settlements. *Hopkins v. Stryker Sales Corp.*, No. 11-cv-02786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."); *Vizcaino*, 290 F.3d at 1051 n. 6 (noting that lodestar multipliers "ranging from one to four are frequently awarded"); *Zwicky v. Diamond Resorts Inc.*, No. CV-20-02322-PHX-DJH, 2024 WL 1717553, at *6 (D. Ariz. Apr. 22, 2024) (awarding lodestar multiplier of 3.879). Therefore, the negative multiplier in this case supports Class Counsel's requested fee award.

### D.    The Requested Fee Award is Not the Product of Collusion.

In evaluating the motion for preliminary approval, the Court considered all three signs of collusion that the Ninth Circuit has identified in *Bluetooth*. *See In re Bluetooth*, 654 F.3d at 947. Nothing in the record has changed to alter the Court's preliminary conclusion regarding these factors. First, the Settlement is non-reversionary, which is a factor that weighs against any indicia of collusion. Cases in the Ninth Circuit that have identified "subtle signs" of collusion include those where the defendant is set to recover some of the settlement fund through a reversionary agreement. *See, e.g., McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 610 (9th Cir. 2021) ("[W]e have identified 'reverter' or 'kicker' provisions as red flags."); *Zwicky v. Diamond Resorts Mgmt. Inc.*, 343 F.R.D. 101, 125 (D. Az. 2022) (granting preliminary approval of class but denying settlement without prejudice to re-file and correct, inter alia, "subtle signs" of collusion); *Maree v. Deutsche Lufthansa AG*, No. 8:20-cv-00885, 2022 WL 5052582, *4 (C.D. Cal. Sep. 30, 2022) (denying claims-made settlement due to the "clandestine" nature of settlement negotiations conducted without any formal discovery). Further, all attorneys' fees will be paid solely from the Settlement Fund, not by Defendant in exchange for Plaintiffs' acceptance of an unfair class

settlement. Federman Decl. ¶ 7. Finally, Settlement Class Members have multiple opportunities to receive monetary distributions (SA ¶¶ 7.1.2; 7.1.3) and this is not a settlement in which the entire class will "receive[] no monetary distribution but class counsel are amply awarded." *In re Bluetooth*, 654 F.3d at 946. Indeed, as discussed above, to avoid diminishing the funds available to Settlement Class Members, while still accounting for the value of Defendant's data security enhancements, Class Counsel departs from the permitted 25% of the total settlement value and seeks credit for only one (1) year of the value of those enhancements in addition to the common fund (16.61% of the total settlement value). Thus, the absence of collusion further supports the requested fee award.

### E.    Class Counsel are Entitled to Reimbursement of Litigation Costs.

In the Ninth Circuit, Class Counsel are entitled to recover "out-of-pocket expenses that would normally be charged to a fee-paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal citation and quotation marks omitted). Indeed, "[t]here is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *DiMercurio v. Equilon Enterprises LLC*, No. 3:19-cv-04029-JSC, 2024 WL 2113857, at *10 (N.D. Cal. May 9, 2024) (quoting *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014)). "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable." *Rutti v. Lojack Corp., Inc.*, No. SACV 06–350 DOC (JCx), 2012 WL 3151077, *12 (C.D. Cal. July 31, 2012).

To date, Class Counsel collectively incurred $13,798.34 in unreimbursed litigation costs. As explained in the supporting Declaration filed herewith, the requested reimbursements are for unavoidable expenses such as filing fees, *pro hac vice* fees, travel, research, and expert fees—all of which were incurred to the benefit of the Class. Federman Decl. ¶ 15. These expenses are typical of litigation, reasonable in amount, and were necessary to achieve the Settlement here. *Id.* For these reasons, Class Counsel's expenses should be approved.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

1

**F.    The Court Should Approve the Service Awards.**

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for the financial or reputation risk undertaken in bringing the action, and, sometimes to recognize their willingness to act as a private attorney general." *Id.* Further, "[i]n the Ninth Circuit, a $5,000 incentive award is presumptively reasonable." *Carter v. Vivendi Ticketing US LLC*, No. 22-01981-CJC, 2023 WL 8153712, at *11 (C.D. Cal. Oct. 30, 2023) (citing cases).

The Court should grant the modest Service Awards of $3,000.00 each to the Settlement Class Representatives to compensate them for the effort and risk entailed in pursuing this litigation. Federman Decl. ¶ 21. Not only are the Service Awards less than the Ninth Circuit's presumptively reasonable $5,000.00 figure, but they are also consistent with service awards approved in other data privacy cases by district courts within the Ninth Circuit. *See Tanner v. Plavan Commercial Fueling, Inc.*, No. 3:24-cv-1341-BTM-JLB, 2025 WL 2231304, at *7 (S.D. Cal. Aug. 4, 2025) (approving service award of $5,000.00); *Giroux v. Essex Property Trust, Inc.*, No. 16-cv-01722-HSG, 2019 WL 1207301, at *7 (N.D. Cal. Mar. 14, 2019) (finding service award of $5,000.00 to be reasonable); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-md-02752-LHK, 2020 WL 4212811, at *6 (N.D. Cal. July 22, 2020) (approving service awards ranging from $2,500.00 to $7,500.00). Among other things, the Class Representatives: (i) provided essential information to Class Counsel throughout the litigation; (ii) collected documents and other evidence that supported the claims alleged in the complaints, Consolidated Complaint, and Amended Consolidated Complaint; (iii) agreed to face invasive and time consuming discovery, including depositions, if necessary; (iv) reviewed pleadings and coordinated with Class Counsel as to the status of, and strategy for, the case and settlement; (v) conferred with Class Counsel and Plaintiffs' Counsel about the settlement negotiations and provided meaningful input about what potential benefits were most important to them; and (vi) considered and approved the settlement terms on behalf of the Settlement Class. *Id.* ¶ 21.

-18-

Accordingly, and in recognition of the substantial benefits the Settlement Class Representatives conferred to the Settlement Class and their efforts generally, a modest service award of $3,000.00 to each of the Plaintiffs ($6,000.00 total) is reasonable and should be approved.

**V.    CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the instant Motion for entry of an Order approving Class Counsel's request for: (i) an attorneys' fees award of $247,630.00; (ii) reimbursement of $13,798.34 in expenses; and (iii) Service Awards Payments of $3,000.00 to each of the Plaintiffs ($6,000 total).

DATED: September 8, 2025                By:    */s/ William B. Federman*
                                        William B. Federman
                                        Tanner R. Hilton
                                        **FEDERMAN & SHERWOOD**
                                        10205 N. Pennsylvania Ave.
                                        Oklahoma City, OK 73120
                                        Telephone: (405) 235-1560
                                        Facsimile: (405) 239-2112
                                        Email: wbf@federmanlaw.com

                                        Robert S. Green
                                        **GREEN & NOBLIN, P.C**
                                        1 Blackfield Drive, No. 360
                                        Tiburon, CA 94920
                                        Telephone: (415) 477-6700
                                        Facsimile: (415) 477-6710
                                        Email: gnecf@classcounsel.com

                                        Daniel Srourian, Esq.
                                        **SROURIAN LAW FIRM, P.C**.
                                        3435 Wilshire Blvd., Suite 1710
                                        Los Angeles, California 90010
                                        Telephone: (213) 474-3800
                                        Facsimile: (213) 471-4160
                                        Email: daniel@slfla.com

                                        *Attorneys for Plaintiffs and the Proposed Class*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

1

2

## <u>CERTIFICATE OF SERVICE</u>

3      I hereby certify that on the 8th day of August 2025, I electronically filed the foregoing

4 with the Clerk of the Court using the CM/ECF system which will send notification of such filing

5 to:

6

7 Christopher J. Seusing                        Jacob P. Wilson
**Wood Smith Henning & Berman LLP**            **Wood Smith Henning & Berman LLP**
685 3rd Ave., 18th Floor                       10960 Wilshire Blvd., 18th Floor

8 New York, NY 10017                            Los Angeles, CA 90024
(475) 755-7050                                 (310) 480-7735

9 cseusing@wshblaw.com                          jwilson@wshblaw.com

10

11 Sean V. Patel
**Wood Smith Henning & Berman LLP**

12 33 Riverside Ave., Suite 502
Westport, CT 06880

13 spatel@wshblaw.com

14

15

16

17

18                                             */s/ William B. Federman*
                                               William B. Federman

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS